*State v. Ronnie A. Hunt, Jr.*, No. 72, September Term, 2014, and *State v. Kevin Hardy*, No. 73, September Term, 2014, Opinion by Harrell, J.

**Criminal Law—Petition for Writ of Actual Innocence—Pleading Requirements**

A petition for writ of actual innocence, filed pursuant to Maryland Code (2001, 2008 Repl. Vol, 2014 Cum. Supp.), Criminal Procedure Article, § 8-301, may not be denied without a hearing if the petition satisfies the bare pleading standards established in § 8-301 and *Douglas v. State,* 423 Md. 156, 31 A.3d 250 (2011).

IN THE COURT OF APPEALS OF
MARYLAND

Nos. 72 and 73

September Term, 2014

_____

STATE OF MARYLAND

v.

RONNIE A. HUNT, JR.

_____

STATE OF MARYLAND

v.

KEVIN HARDY

_____

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

_____

Opinion by Harrell, J.

_____

Filed: June 18, 2015

On 9 March 2007, *Baltimore Sun* reporter Jennifer McMenamin ("McMenamin") reported alarming questions about the academic qualifications of a high-ranking Maryland law enforcement ballistics expert named Joseph Kopera ("Kopera") (the "2007 Article").[1] McMenamin wrote that Kopera lied allegedly, as an expert witness for the prosecution, about his credentials and qualifications in trials in Maryland for over twenty years. The 2007 Article suggested that prosecutors around the state "will likely be dealing with fallout from the investigation [into Kopera's qualifications] for years." That predicted fallout continues to rain-down in the two cases we discuss together today.[2]

Pursuant to Maryland Code (2001, 2008 Repl. Vol, 2014 Cum. Supp.), Criminal Procedure Article, § 8-301, Ronnie A. Hunt, Jr. ("Hunt"), and Kevin Hardy ("Hardy") (collectively, "Respondents"), both incarcerated currently, filed in 2011 and 2012, respectively, Petitions for Writ of Actual Innocence in their unrelated cases. Both alleged that newly discovered evidence relative to Kopera, who testified in their trials as a

---

[1] According to the 2007 Article, Kopera claimed in court to have degrees that he had not earned in fact. Kopera testified frequently that he had a degree from the Rochester Institute of Technology ("RIT") in photographic science/engineering and, on at least one occasion, testified that his RIT degree was in aerospace engineering. Kopera claimed also to have a mechanical engineering degree from the University of Maryland. The 2007 Article reported that Kopera had forged at least one document (a transcript that he claimed was from the University of Maryland) offered originally to attorneys with the Innocence Project, attempting to justify his qualifications. In response to further questions from the attorneys at the Innocence Project, Kopera provided allegedly a "certificate of training" from the U.S. Air Force, to what intended curative effect remains obscure.

[2] *See also Douglas v. State*, 423 Md. 156, 31 A.3d 250 (2011); *Jackson v. State*, 216 Md. App. 347, 86 A.3d 97 (2014); *Kublicki v. State*, 207 Md. App. 412, 53 A.3d 361 (2012), *rev'd on other grounds*, 440 Md. 33, 99 A.3d 730 (2014), *petition for cert. filed*, *Maryland v. Kulbicki*, U.S., Jan. 16, 2015 (No. 14-848).

prosecution witness, created a substantial or significant possibility that the outcomes (convictions) in their respective 1991 and 1989 trials may have been different (had Kopera not lied) and that such evidence could not have been discovered in time for them to move timely for a new trial pursuant to Maryland Rule 4-331.[3]  Their petitions characterized the questions about Kopera's qualifications as "newly discovered evidence" that warranted reversals of their convictions and/or new trials.[4]  The Circuit Court for Baltimore City denied their petitions without a hearing.  On direct appeal to the Court of Special Appeals, the intermediate appellate court reversed in both instances the rulings of the Circuit Court and remanded for further proceedings.  Today we affirm the judgments of the Court of Special Appeals, and, in considered dicta, provide guidance on remand for the hearings and evaluation of petitions for writ of actual innocence.

---

[3] Maryland Rule 4-331(a) provides that the court may, "in the interest of justice," order a new trial on motion of the defendant within ten days of the verdict.  Rule 4-331(c) provides that the court may grant a new trial:

> on the ground of newly discovered evidence which could not have been discovered by due diligence in time to move for a new trial pursuant to section (a) of this Rule:
>> (1) on motion filed within one year after the later date of (A) the date the court imposed the sentence or (B) the date the court received a mandate issued by the final appellate court to consider a direct appeal from the judgment or a belated appeal permitted as post conviction relief; . . . .

[4] Hunt and Hardy identify Kopera's alleged falsification of academic credentials as the "newly discovered evidence."  To the extent that there is a difference in the Petitioners' contentions, Hardy suggests additionally that Kopera's apparent history of perjury in that regard is also additional discrete newly discovered evidence.

2

## I. FACTS

### A. Ronnie A. Hunt, Jr.

Following a jury trial spanning several days in September of 1991, Ronnie A. Hunt, Jr. ("Hunt") was convicted on 25 September 1991 in the Circuit Court for Baltimore City of first-degree murder and use of a handgun in the commission of a crime of violence. The jury found that Hunt, along with his co-defendant, Harry Johnson, III, on 10 April 1991 shot to death Sheldene Simon on the front lawn of the victim's home in Baltimore during a gunfight involving multiple shooters. Hunt was sentenced to life imprisonment for murder, plus a consecutive twenty years for the handgun offense. Hunt's convictions were affirmed in 1993 by the Court of Special Appeals on direct appeal in an unreported opinion.

Hunt filed on 8 April 1997 a Petition for Post-Conviction Relief, which was denied by the Circuit Court on 19 August 1997. Hunt filed on 22 September 1997 an Application for Leave to Appeal, which was denied by the Court of Special Appeals on 23 January 1998. Hunt filed *pro se* on 31 January 2011 an Amended Petition for Writ of Actual Innocence (the "Hunt Amended Petition" or "Hunt's Amended Petition") in the Circuit Court for Baltimore City.[5] In the Amended Petition he set out the procedural history of his case and claimed that his federal Constitutional Rights to due process and equal protection of the law afforded under the Fifth and Fourteenth Amendments were

---

[5] On 30 September 2010 Hunt filed initially a petition. Hunt filed his Amended Petition before the State responded to the original petition and before the Circuit Court took any action.

denied him "based on false evidence." Hunt alleged the following, under a heading titled

"NEWLY DISCOVERED EVIDENCE":

> In 2007 it was unveiled by the Office of the Public Defender Innocence Project and the Maryland State Police that Joseph Kopera, reportedly an expert in ballistics, had in fact testified and lied under oath about his academic credentials for years, and probably falsified evidence as well. At the time of Kopera's reported death as a result of a self-inflicted gunshot wound, he was employed with the Maryland State Police, after being employed with the Baltimore City Police Department for approximately 21 years. Kopera was the lynchpin in the State's case, in which [Hunt] was convicted based solely on the testimony of Kopera, who has since become known as a liar and fraud.

(minor alterations added). Later, in a section of Hunt's Amended Petition titled

"STATEMENT OF FACTS," Hunt alleged the following:

> A number of inconsistencies in Kopera's trial testimony in several or more cases regarding his academic credentials prompted an investigation or background check on Kopera by Ms. Michele Nethercott, chief attorney, out of the Office of the Public Defender Innocence Project. That also led to a subsequent investigation by the Maryland State Police, which unveiled some very troubling facts, that Kopera had been "lying" about his academic credentials for years, all while testifying under oath in countless court rooms in Baltimore City, the State of Maryland, and perhaps, state and federal courts in Virginia, Delaware, and Pennsylvania. It has been proven that Kopera wasn't only a liar, but a fraud as well. . . .

(minor alterations added).

Hunt argued that Kopera's testimony in his capacity as the State's ballistics expert

was the State's "only evidence" against him and "the lynch [sic] pin in the State's case."

Hunt reproduced a portion of the trial transcript in his case where Kopera discussed his

4

(fraudulent) qualifications.[6] He reproduced then portions of the trial transcript where Kopera discussed a bullet specimen recovered from Simon's body, a semiautomatic pistol, and Kopera's process of "match[ing]" the two. Hunt noted that the State had not produced any DNA, fingerprints, or eye witnesses who placed him at the scene of the murder, and so, "without the false testimony of [Kopera], regarding both credentials and the murder weapon, it is highly unlikely that the State would have proven their case against [Hunt] beyond a reasonable doubt." Hunt surmised penultimately:

> Every factual finding made by the jury hinged upon a determination that Kopera testified credibly. If Kopera's fake credentials and/or false testimony had been known, however, it is reasonably probable that the outcome of the trial would have been different[,] because his testimony probably would not have been as credible.

Hunt concluded by requesting, among other things, "a reversal of his conviction and unconditional release, otherwise, a new trial" and that "a prompt hearing be set in this matter."

The Circuit Court denied Hunt's Amended Petition, without a hearing, on 15 February 2011 because the petition "fail[ed] to state a claim or assert grounds for which relief may be granted pursuant to [§ 8-301(a)]." Hunt filed then a motion for reconsideration on 3 March 2011, which was denied by the Circuit Court on 7 March 2011.

---

[6] *See supra* note 1. In Hunt's trial, Kopera testified that he held a degree in "mechanical engineering" from the University of Maryland and also "an engineering degree" from RIT.

*B. Kevin Hardy*

Following a jury trial, Kevin Hardy ("Hardy") was convicted on 22 March 1991 in the Circuit Court for Baltimore City of first-degree murder, use of a handgun in a crime of violence, and unlawfully wearing, carrying, and transporting a handgun. The jury found that Hardy, along with his co-defendant Ronald Nance, shot to death Aaron Carroll and shot and wounded Sandra Keve in the Flag House housing projects in Baltimore City on 3 April 1990. Hardy was sentenced to life imprisonment, plus forty-five years. Hardy's convictions were affirmed by the Court of Special Appeals on direct appeal and ultimately the Court of Appeals. *Nance and Hardy v. State*, 93 Md. App. 475, 613 A.2d 428 (1992), *aff'd*, 331 Md. 549, 629 A.2d 633 (1993).

Hardy filed on 11 March 1997 a Petition for Post-Conviction Relief, which was denied on 26 March 1998. Hardy followed that with an Application for Leave to Appeal in the Court of Special Appeals, which was denied in an unreported, per curiam opinion on 25 June 1998. Hardy filed *pro se* on 31 July 2012 a Petition for Writ of Actual Innocence (the "Hardy Petition" or "Hardy's Petition") in the Circuit Court. Hardy's Petition reproduced the list of "requirements" from § 8-301 in numerical list form and marshalled various allegations and arguments in subheadings under each called-out statutory requirement. Under a heading titled "Grounds," Hardy alleged the following:

> The State's key witness, Joseph Kopera, was an imposter. Kopera lied relentlessly about his credentials to the jury in [Hardy's] case. And, Kopera manufactured his testimony to bolster the State's case-in-chief against Petitioner.

6

(minor alterations added). Kopera was called by the State to examine four bullets removed from the victim's body. Hardy reproduced portions of the transcript of his trial where Kopera testified regarding his qualifications as a ballistics expert.[7] Hardy argued that, in light of an eye witness's arguably inconsistent testimony, Kopera's testimony "was desperately needed and used in[] [the State's] case to bolster the State's theory of two shooters of the victim . . . ." Hardy maintained that Kopera "falsified himself in order to impress upon [the jury] the untrue accusation from the State, that [Hardy] planned and participated in the killing of Mr. Carroll." In a subheading concerning "newly discovered evidence," Hardy characterized Kopera as "a ballistic expert imposter." In support of his argument, Hardy attached to his Petition a press release from the Department of Maryland State Police, dated 8 March 2007 ("State Police Press Release"), announcing concern over Kopera's scholastic credentials, a copy of the 2007 Article, and an Affidavit of Suzanne Drouet in which Ms. Drouet recounted her discovery of Kopera's misrepresentations. Finally, Hardy concluded by "emphatically requesting/seeking" a hearing on the petition "to prove that Mr. Joseph Kopera's perjured testimony, absolutely, affected the judgment of the jury in [Hardy's] case" and requested further that the Circuit Court grant him a new trial or other relief as deemed appropriate.

The Circuit Court denied, without a hearing, Hardy's petition on 14 August 2012.

---

[7] *See supra* notes 1 and 6. At Hardy's trial, Kopera's testimony regarding his qualifications was almost identical to his testimony at Hunt's trial.

## C. All Together Now

Hunt and Hardy appealed individually to the Court of Special Appeals, claiming that the Circuit Court[8] erred in denying their petitions without a hearing. In separate unreported opinions, the intermediate appellate court reasoned that *Douglas v. State*, 423 Md. 156, 31 A.3d 250 (2011), where we concluded a hearing was warranted, presented a very similar factual scenario to the cases at hand. Accordingly, the appellate court reversed the rulings of the Circuit Court in Hunt's and Hardy's cases and remanded them for further proceedings.

In each case, the State petitioned for a writ of certiorari, which petitions we granted on 21 October 2014 to consider the following common question:

> Did the Court of Special Appeals incorrectly reverse the circuit court's denial of [the Respondents'] amended petition[s] for writ of actual innocence without a hearing where [the Respondents] did not satisfy the statutory requirements of Section 8-301 and where the Court of Special Appeals' ruling was inconsistent with its own case authority on the issue?

*State v. Ronnie A. Hunt, Jr.*, 440 Md. 225, 101 A.3d 1063 (2014); *State v. Kevin Hardy*, 440 Md. 225, 101 A.3d 1063 (2014).

## II. ARE HUNT AND HARDY ENTITLED TO HEARINGS ON THEIR PETITIONS FOR WRIT OF ACTUAL INNOCENCE?

### A. Standard of Review

In *Douglas*, 423 Md. at 165, 31 A.3d at 255, we held that "the denial of a petition for writ of actual innocence is an immediately appealable order, regardless of whether the

---

[8] Coincidentally, the same Circuit Court judge ruled on both petitions.

trial court held a hearing before denying the petition." We did not set out the appropriate standard of review for appeals in such matters; however, the Court of Special Appeals concluded rightly elsewhere that the standard of review when appellate courts consider the legal sufficiency of a petition for writ of actual innocence is *de novo*. *See Ward v. State*, 221 Md. App. 146, 156, 108 A.3d 507, 513 (2015); *Hawes v. State*, 216 Md. App. 105, 133, 85 A.3d 291, 308 (2014); *Keyes v. State*, 215 Md. App. 660, 669–70, 84 A.3d 141, 146–47 (2014); *id.* at 670 n.6; 84 A.3d at 147 n.6. Courts reviewing actions taken by a circuit court after a hearing on a petition for writ of actual innocence limit their review, however, to whether the trial court abused its discretion. *Douglas*, 423 Md. at 188, 31 A.3d at 269 ("[D]ecisions on the merits of requests for new trials based on newly discovered evidence, whether filed pursuant to Rule 4-331 or [§ 8-301], are committed to the hearing court's sound discretion."); *see Ward*, 221 Md. App. at 156, 108 A.3d at 512–13 ("Accordingly, we review a circuit court's ruling upon the merits of a petition for a writ of actual innocence for an abuse of discretion."); *Keyes*, 215 Md. App. at 669, 84 A.3d at 146–47.

### B. Section 8-301

Section 8-301 of the Criminal Procedure Article allows certain individuals[9] to petition for a writ of actual innocence based on newly discovered evidence. Section 8-

---

[9] Specifically, "person[s] charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime" may file petitions for a writ of actual innocence. Maryland Code (2001, 2008 Repl. Vol, 2014 Cum. Supp.), Criminal Procedure Article, § 8-301.

9

301(e) provides that a court "shall" hold a hearing on a petition for writ of actual innocence in certain circumstances:

> (e) *Hearing.*—(1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.
> > (2) The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted.[10]

Subsection (b) of § 8-301 sets out the pleading sufficiency requirements for petitions for writ of actual innocence:

> (b) *Requirements.*—A petition filed under this section shall:
> > (1) be in writing;
> > (2) state in detail the grounds on which the petition is based;
> > (3) describe the newly discovered evidence;
> > (4) contain or be accompanied by a request for hearing if a hearing is sought; and
> > (5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.

Maryland Rule 4-332, effective 1 October 2011, particularizes the required contents of petitions for writ of actual innocence. In addition to requiring the recitation of certain procedural information,[11] Rule 4-332(d) elaborates on the contents of petitions for writ of actual innocence. Such petitions must state:

---

[10] *See* Maryland Rule 4-332(i)–(j) (providing similarly).

[11] Pursuant to Rule 4-332(d), petitions for a writ of actual innocence must be in writing and signed by either the petitioner or the petitioner's attorney. Further, the petition must state also:

(Continued…)

10

(6) that the request for relief is based on newly discovered evidence which, with due diligence, could not have been discovered in time to move for a new trial pursuant to Rule 4-331;

(7) a description of the newly discovered evidence, how and when it was discovered, why it could not have been discovered earlier, and, if the issue of whether the evidence could have been discovered in time to move for a new trial pursuant to Rule 4-331 was raised or decided in any earlier appeal or postjudgment proceeding, the identity of the appeal or proceeding and the decision on that issue;

(8) that the newly discovered evidence creates a substantial or significant possibility, as that standard has been judicially determined, that the result may have been different, and the basis for that statement;

---

(…continued)

(1) the court in which the indictment or criminal information was filed and the file number of that case;

(2) if the case was removed to another court for trial, the identity of that court;

(3) each offense of which the petitioner was convicted, the date of the judgment of each conviction, and the sentence imposed;

(4) if the judgment was appealed, the case number in the appellate court, a concise description of the issues raised in the appeal, the result, and the date of the appellate court's mandate;

(5) for each motion or petition for post-judgment relief, the court in which the motion or petition was filed, the case number assigned to each proceeding, a concise description of the issues raised, the result, and the date of disposition;

. . .

(10) if the petitioner is not already represented by counsel, whether the petitioner desires to have counsel appointed by the court and, if so, facts establishing indigency; [and]

(11) that a copy of the petition, together with all attachments, was mailed to the State's Attorney of the county in which the petition was filed[.]

(9) that the conviction sought to be vacated is based on an offense that the petitioner did not commit;

. . .

(12) the relief requested; and
(13) whether a hearing is requested.

The "grounds" referred to in § 8-301(e)(2) and (b)(2) are set out in § 8-301(a):

(a) *Grounds*.—A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
(1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
(2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.[12]

When ruling on the merits of petitions for writ of actual innocence, circuit courts have at their disposal the ability to "set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate." § 8-301(f)(1); *see* Rule 4-332(*l*). Whichever of these results obtain, the hearing judge must state on the record the reasons for his or her ruling. § 8-301(f)(2).

We determined in *Douglas* that § 8-301 "imposes a burden of pleading, such that a petitioner is entitled to a hearing on the merits of the petition, provided the petition sufficiently pleads grounds for relief under the statute, includes a request for a hearing,

---

[12] *See supra* note 3.

and complies with the filing requirements" of § 8-301(b).[13]  *Douglas*, 423 Md. at 165, 31 A.3d at 255.  Petitioners must "'assert' grounds for relief; [§ 8-301] does not require the petitioner to satisfy the burden of proving those grounds in the papers submitted." *Douglas*, 423 Md. at 179, 31 A.3d at 264.  If a petitioner satisfies the pleading standard, § 8-301(e)(1) directs that a hearing be held.  The pleading requirement "mandates that the trial court determine whether the allegations could afford a petitioner relief, if those allegations would be proven at a hearing, assuming the facts in the light most favorable to the petitioner and accepting all reasonable inferences that can be drawn from the petition." *Douglas*, 423 Md. at 180, 31 A.3d at 264.  Finally, we "construe liberally filings by *pro se* inmates, particularly when the statute involved is remedial." *Douglas*, 423 Md. at 182, 31 A.3d at 266; *see State v. Matthews*, 415 Md. 286, 312, 999 A.2d 1050, 1066 (2010) (referring to § 8-301 as both "procedural" and "remedial").

In *Douglas*, we concluded that that petition[14] satisfied § 8-301's pleading requirement.  423 Md. at 183, 31 A.3d at 266.  Douglas met easily the requirement of

---

[13] Section 8-301 was amended in 2010, after the filing of the subject petitions in *Douglas*, but before the filing of our opinion.  In that case, we cited the current version of the statute, as "none of the amendments affect[ed] our analysis." *Douglas*, 423 Md. at 163 n.1, 31 A.3d at 254 n.1.

[14] The *Douglas* opinion consolidated two cases.  In both, the petitioners (Ellis R. Douglas, Jr., and Lamont Curtis) filed petitions for writ of actual innocence based on newly discovered evidence.  Throughout our discussions here of the *Douglas* opinion, we refer to the petition filed by Douglas.

We determined that the petition filed by Curtis did not meet the requirements to obtain a hearing under § 8-301 because the evidence referred to by Curtis—an affidavit from his grandmother indicating that she never mentioned a certain name to investigating

(Continued…)

13

§ 8-301(b)(1) by submitting his petition in writing. *Id.* In the cases at bar, both the Hunt and Hardy Petitions were filed in writing, and therefore cleared § 8-301(b)(1)'s initial hurdle.

We concluded that Douglas satisfied § 8-301(b)(2)'s requirement that the petition "state in detail the grounds in which the petition is based." *See id.* As noted above, § 8-301(e)(2) authorizes a court to dismiss a petition for writ of actual innocence, without a hearing, "if the court concludes that the allegations, if proven, could not entitle a petitioner to relief." *Douglas*, 423 Md. at 185, 31 A.3d at 267. We concluded ultimately that the grounds alleged by Douglas, "if proven, *could* entitle him to relief." *Id.* (emphasis added). We explained:

> Douglas asserted that there was newly discovered evidence that Officer Kopera, who had testified at Douglas's trial, had falsified his credentials. Douglas submitted as an exhibit with his petition a newspaper article explaining his allegation of newly discovered evidence. Dated March 9, 2007, the article reported that "Joseph Kopera, head of the Maryland State Police firearms unit, claimed on witness stands to have degrees that he never earned. . . . Questions regarding the longtime firearms and toolmarks examiner's credentials were raised several weeks ago by state public defenders working with the Innocence Project." The article explained that "the chief attorney with the . . . Innocence Project . . . became concerned about Kopera's qualifications while reviewing transcripts" and noting inconsistencies regarding the credentials he testified he earned. Given that there were "hundreds of people he helped convict" and that Kopera had worked for "21 years in the Baltimore Police Department's crime laboratory before he was lured away in 1991 to join the

---

(…continued)

police—was known but unavailable (due to his grandmother's health) at trial, and therefore not "newly discovered." *Douglas*, 423 Md. at 186–87, 31 A.3d at 268.

14

state police," viewing inferences in the light most favorable to Douglas, it could be that the evidence could not have been discovered within time to move for a new trial under Rule 4-331.

*Douglas*, 423 Md. at 185–86, 31 A.3d at 267–68. Hunt's and Hardy's petitions make almost identical allegations to those in Douglas's petition and therefore satisfy similarly the requirements of § 8-301(b)(2). Hunt's Amended Petition identified also the 2007 revelation that Kopera's qualifications and veracity may not be what they seemed. Although Hunt did not attach a copy of the 2007 Article to his petition, he related the substantive contents of the article, including the discovery by Michele Nethercott, Esquire, of the Innocence Project, of Kopera's inconsistent trial testimony in several cases and the results of an initial investigation into Kopera's academic credentials. Hardy's Petition discussed also the questions surrounding Kopera's credentials. Further, Hardy attached a copy of the 2007 Article, as well as copies of the State Police Press Release and an affidavit of Suzanne Drouet, an Assistant Public Defender, prepared apparently in connection with another case[15] in which Ms. Drouet recounted her experience auditing Kopera's claimed credentials.

Douglas "describe[d] the newly discovered evidence," in satisfaction of § 8-301(b)(3), by alleging that on 9 March 2007 "an article was published that 'exposed Joseph Kopera . . . as [a] perjurer.'" *Douglas*, 423 Md. at 183, 31 A.3d at 266. We noted that, as Kopera testified as an expert witness for the State during Douglas's trial, the

---

[15] The undated affidavit was produced apparently in connection with *Alcantara v. State*, Case No. 109444C, in the Circuit Court for Montgomery County.

15

"allegation, viewed in the light most favorable to Douglas, could be proven to be newly discovered evidence." *Douglas*, 423 Md. at 184, 31 A.3d at 266. By the same token, the Hunt and Hardy Petitions satisfy also § 8-301(b)(3)'s "newly discovered evidence" requirement.

Construing liberally Douglas's *pro se* petition, we concluded that it satisfied § 8-301(b)(4)'s requirement that a petition "contain or be accompanied by a request for hearing if a hearing is sought." *See id.*, 31 A.3d at 266–67. Although Douglas did not state expressly "I request a hearing," we concluded that the petition "reflect[ed] Douglas's indicated desire for a hearing" as his petition recited the complete language of the statute, including the text of § 8-301(b)(4) itself. *Id.* He filed also a proposed "Writ of Habeas Corpus" for the warden to produce him for a hearing on his petition. *Id.*, 31 A.3d at 267. The Hunt and Hardy Petitions requested hearings explicitly (Hardy's even "emphatically" so).

As Douglas had not filed previously a petition for writ of actual innocence,[16] § 8-301(b)(5) did not apply in his case as he had no claims to distinguish from those made in prior filings. *Douglas*, 423 Md. at 184–85, 31 A.3d at 267. Like Douglas, Hunt and Hardy filed various postconviction motions, but neither filed previously a petition for writ of actual innocence, and so § 8-301(b)(5) does not figure here.

---

[16] We determined that the phrase "prior petitions" did not refer to "every prior filing," and so Douglas's two postconviction petitions, motion to reopen his closed postconviction proceeding (all denied), and corresponding appeals (denied also) were inapposite. *Douglas*, 423 Md. at 184–85, 31 A.3d at 267; *see id.* at 184 n.16, 31 A.3d at 267 n.16.

As Maryland Rule 4-332, noted earlier, became effective 1 October 2011, it does not apply to Hunt's Amended Petition, which was filed on 31 January 2011.[17] *See Hawes*, 216 Md. App. at 133 n.18, 85 A.3d at 308 n.18. Hardy's Petition was filed 31 July 2012, however, and so must comply with Rule 4-332. Rule 4-332(d)(6) elaborates on § 8-301(b)(3)'s "newly discovered evidence" requirement, adding that a petition for writ of actual innocence must allege that the newly discovered evidence, "with due diligence, could not have been discovered" in time to move for a new trial pursuant to Rule 4-331. The explicit requirement that a petitioner (or their attorney) must not have been able to discover the new evidence "with due diligence" does not alter our conclusion that Hardy's Petition satisfies § 8-301(b)(3).[18] Rule 4-332(d)(7) goes on to say that petitions must state how and when the new evidence was discovered and why it could not have been discovered earlier. Hardy's Petition satisfies the pleading requirement of Rule 4-332(d)(7) by attaching the 2007 Article, as well as the affidavit of Ms. Drouet, and reiterating the substantive contents of the same in the body of his petition. Rule 4-332(d)(9) requires further that the petition must assert that the contested conviction "is based on an offense that the petitioner did not commit." In his petition, Hardy states that he "has maintained his innocence in the crimes charged and still does to this date." Finally, as noted earlier, Rule 4-332(d) requires the recitation of certain procedural

---

[17] *See Douglas*, 423 Md. at 182 n.14, 31 A.3d at 266 n.14 (citing 38 Md. Reg. 1195 (23 September 2011) (providing that Rule 4-332 applies to actions commenced on or after 1 October 2011 "and, insofar as practicable, to all actions then pending")).

[18] *See infra* Part III.

information.  Hardy's Petition was in writing and signed by him.  It was filed in the Circuit Court for Baltimore City in Case Nos. 190274025, 27, and 29, which were the original file numbers of his cases; therefore, the Petition contains the identifying information required by Rule 4-332(d)(1).  Hardy attached also to his Petition a compliant certificate of service, satisfying Rule 4-332(d)(11)'s requirement that a copy of the Petition was mailed to the appropriate State's attorney.

Hardy's Petition does not comply, however, with other technical requirements of Rule 4-332(d), in that his petition does not set out each offense of which he was convicted, the date of the conviction, and the sentence imposed (Rule 4-332(d)(3)), nor the procedural history of his cases on appeal (Rule 4-332(d)(4)), nor does his petition contain a recitation of the procedural history of each motion or petition for post-judgment relief (Rule 4-332(d)(5)).[19]  The Circuit Court need not dismiss Hardy's Petition, however, if it concludes that the petition complies substantially with the requirements of subsection (d).  *See* Maryland Rule 4-332(i)(1)(A) (providing that the court may "dismiss the petition if it finds as a matter of law that the petition fails to comply *substantially* with the requirements of section (d) of this Rule or otherwise fails to assert grounds on which relief may be granted" (emphasis added)).  It does not appear that the Circuit Court dismissed Hardy's Petition on 14 August 2012 on any of these grounds.  Had that been

---

[19] Hardy's Petition does not state whether he is represented by counsel nor does it state whether he desires to have counsel appointed.  Further, he does not state facts establishing his indigency, in violation of Rule 4-332(d)(10).

the apparent basis for that dismissal, without a hearing, the trial court did not appear to consider the "substantial compliance" relief valve of Rule 4-332(i)(1)(A).

We could find no reported appellate cases in which a petition filed after 1 October 2011 was dismissed for lack of compliance with the more technical requirements of Rule 4-332.[20] Where petitions were dismissed, it was for more substantive violations of other requirements. *See, e.g.*, *Ward*, 221 Md. App. at 168–70, 108 A.3d at 520–21 (concluding that the circuit court erred in concluding that certain "newly discovered evidence" was "merely impeaching," and remanding the case for further consideration); *Yonga v. State*, 221 Md. App. 45, 64, 108 A.3d 448, 459 (2015) (determining that writs of actual innocence were not available to challenge a conviction based upon a guilty plea), *cert. granted*, 442 Md. 515, 113 A.3d 624 (2015); *Jackson v. State*, 216 Md. App. 347, 364–65, 373–75, 86 A.3d 97, 107, 112–13 (2014) (finding no abuse of discretion where the hearing judge concluded that the "newly discovered evidence" could have been discovered in time to move for a new trial and that, regardless, there was no substantial or significant possibility that the jury could have come to a different result); *Keyes*, 215 Md. App. at 666 n.3, 84 A.3d at 144 n.3 (noting that the petition was subject to Rule 4-332, but "not rely[ing] upon noncompliance with Rule 4-332 for affirmation" of the circuit court's denial of the petition, as the petition did not set forth newly discovered evidence

---

[20] In addition to there being no appellate cases in which a petition filed after 1 October 2011 was dismissed for lack of compliance with Rule 4-332's technical requirements, the issue of Hardy's compliance with Rule 4-332 was neither raised by the State nor addressed by the Court of Special Appeals in its unreported opinion.

that created a substantial or significant possibility that the result may have been different).

III. VARIATIONS ON A THEME: WHAT COULD HAPPEN AT THE HEARINGS TO BE HELD?

In *Douglas*, after we concluded that the petitioner[21] was entitled to a hearing, we emphasized that "although Douglas has satisfied the pleading requirement to assert grounds for relief, it does not follow automatically that he can prove his claim." 423 Md. at 186, 31 A.3d at 268. We recognized that "decisions on the merits of requests for new trials based on newly discovered evidence, whether filed pursuant to Rule 4-331 or [§ 8-301], are committed to the hearing court's sound discretion." *Douglas*, 423 Md. at 188, 31 A.3d at 269. The Court of Special Appeals in the present cases expressed reservations as to the likelihood of success at Respondents' prospective hearings. Both unreported opinions concluded with the same paragraph:

> Although we conclude that [the Respondent] is entitled to a hearing, having sufficiently met the pleading requirements of [§ 8-301], "it does not follow automatically," as the Court of Appeals has noted, "that he can prove his claim" at that hearing. *Douglas*, 423 Md. at 186. We observe that Hunt may have difficulty doing so. In *Jackson v. State*, 216 Md. App. 347 (2014), this Court affirmed a circuit court's denial of a petition for writ of actual innocence based on Kopera's perjury, after holding a hearing on Jackson's petition. The circuit court denied Jackson's petition, after concluding that Jackson had not shown that Kopera's misrepresentations were material, that he had not established that the purported "newly discovered evidence" "created a substantial or significant possibility that the result may have been different," and that he had not acted with due diligence in discovering that

---

[21] *See supra* note 14.

20

Kopera had misrepresented his qualifications at his trial. . . .[22]

Such reserve is warranted, as Respondents face significant hurdles in convincing a hearing judge that the questions regarding Kopera's qualifications "create[] a substantial or significant possibility that the result may have been different" and "could not have been discovered in time to move for a new trial." § 8-301(a). Respondents' causes are by no means doomed, however; a hearing judge may determine, based on whatever evidence and arguments as may be presented at the hearing, that Respondents are entitled to a new trial, resentencing, or other appropriate relief. *See* § 8-301(f)(1).

In *Douglas*, we concluded that the allegations contained in the petition, if proven at the hearing, could have entitled Douglas to such relief. 423 Md. at 185, 31 A.3d at 267. As discussed earlier, Douglas's "newly discovered evidence" regarding Kopera's scholastic qualifications are almost verbatim those of Hunt and Hardy. Douglas's convictions[23] arose out of an altercation between himself and several Baltimore City police officers outside a bar in Baltimore City where he shot two police officers. *Douglas*, 423 Md. at 165, 31 A.3d at 255–56. Seven police officers and two ballistics experts were called to testify at his trial, one of the latter of which was Kopera. *Douglas*, 423 Md. at 166, 31 A.3d at 256. Each of the two experts examined at least one bullet and both linked the bullet with Douglas's gun. *Id.* Even in light of the other evidence against

---

[22] In a footnote, the Court of Special Appeals referred also to its opinion in *Kulbicki*, 207 Md. App. 412, 53 A.3d 361.

[23] Douglas was convicted for attempted murder in the second degree, assault, and related handgun offenses. *Douglas*, 423 Md. at 165, 31 A.3d at 255.

Douglas, we determined that a Circuit Court *could* find that the new evidence "creates a substantial or significant possibility that the result may have been different." *Douglas*, 423 Md. at 185–86, 31 A.3d at 267–68. In the present cases, the Circuit Court may very well find, after a hearing, that Hunt and Hardy carry successfully their burdens of proof and are entitled to relief based solely on proof of the allegations contained in their respective petitions.

We note further that Hunt and Hardy's Petitions are not doomed necessarily because the newly discovered evidence, as characterized by the Court of Special Appeals, may be only "impeaching." In considering whether certain forms of newly discovered evidence might create a "substantial or significant possibility that the result may have been different," cases from the Court of Special Appeals develop the concept of "impeaching," as opposed to "merely impeaching," evidence in the context of § 8-301 petitions for writ of actual innocence. The reasoning of these cases stems in large part from two cases—one from the Court of Special Appeals and one from this Court— discussing the value of "newly discovered evidence" in the context of Rule 4-331 motions for a new trial. In *Campbell*, after noting that the newly discovered evidence must be "material" (among other things) in order to justify a new trial, we stated that the evidence must be "more than 'merely cumulative or impeaching.'" *Campbell v. State*, 373 Md. 637, 669, 821 A.2d 1, 20 (2003) (quoting *Argyrou v. State*, 349 Md. 587, 602, 709 A.2d 1194, 1201 (1998)). In *Jackson v. State*, 164 Md. App. 679, 884 A.2d 694 (2005), again considering the value of newly discovered evidence in the context of a motion for a new trial, the Court of Special Appeals reasoned:

22

> The distinction between "impeaching" and "merely impeaching," albeit nuanced, is pivotally important. Newly discovered evidence that a State's witness had a number of convictions for crimes involving truth and veracity or had lied on a number of occasions about other matters might have a bearing on that witness's testimonial credibility, but would not have a direct bearing on the merits of the trial under review. Such evidence would constitute collateral impeachment and would, therefore, be "merely impeaching." If the newly discovered evidence was that the State's witness had been mistaken, or even deliberately false, about inconsequential details that did to [sic] go to the core question of guilt or innocence, such evidence would offer peripheral contradiction and would, therefore, be "merely impeaching." If the newly discovered evidence, on the other hand, was that the State's witness had actually testified falsely on the core merits of the case under review, that evidence, albeit coincidentally impeaching, would be directly exculpatory evidence on the merits and could not, therefore, be dismissed as "merely impeaching."

*Jackson*, 164 Md. App. at 697–98, 884 A.2d at 704–05.

The intermediate appellate court deployed this reasoning at least twice in cases where convicted persons challenged their convictions and relied at least in part on the revelations regarding Kopera's mis-represented qualifications. In *Kulbicki v. State*, 207 Md. App. 412, 53 A.3d 361 (2012), *rev'd on other grounds*, 440 Md. 33, 99 A.3d 730 (2014), *petition for cert. filed*, *Maryland v. Kulbicki*, U.S., Jan. 16, 2015 (No. 14-848), after a hearing on a petition for postconviction relief, Kulbicki argued (among other things) that the State's use of "perjured, false, and misleading expert ballistics testimony" denied him a fair trial. 207 Md. App. at 435, 53 A.3d at 374–75. Before moving on to substantive discussion of Kulbicki's other arguments on appeal, the Court of Special Appeals noted that "Kulbicki waived any claims regarding Kopera's perjury. To the

23

extent that . . . a background investigation would have revealed that Kopera lacked the claimed college degrees, Kulbicki could have raised his contentions on direct appeal." *Kulbicki*, 207 Md. App. at 444, 53 A.3d at 380. Because Kulbicki did not show that Kopera's perjury was "material," concluded the intermediate appellate court, his "valid constitutional claim recognizable under the [Uniform Postconviction Procedure Act]" failed on the merits. *Kulbicki*, 207 Md. App. at 446, 53 A.3d at 381. The court concluded that portion of its analysis by saying:

> [T]here simply is no likelihood that the jury's determination would have been influenced by the fact that Mr. Kopera did not have the academic credentials he claimed. As the State notes in its brief, the record reflected that ballistics is a field for which no college degree is offered, and the expertise for the field is usually based on experience, which Kopera had in copious amounts.

*Kulbicki*, 207 Md. App. at 447, 53 A.3d at 382 (internal quotations omitted). A majority of this Court reversed the Court of Special Appeals on other grounds.[24] *Kulbicki v. State*,

---

[24] In its briefs in the present cases, the State argues that the majority opinion in *Kulbicki* "confirms that the evidence which Hunt claimed to be newly discovered was available and could have been uncovered by him at the time of his trial." The State asserts in this regard:

> In *Kulbicki*, this Court, addressing the right to effective assistance of counsel in the context of a challenge to Comparative Bullet Lead Analysis (CBLA) evidence, concluded that evidence calling into question the conclusions of CBLA "was available" to Kulbicki's counsel at trial but "was never exhumed" and "never explored, even though opportunity knocked." This Court faulted Kulbicki's attorneys for failing to investigate and discover what the Court determined to be available material.

(Continued…)

24

440 Md. 33, 99 A.3d 730 (2014) (discussing the Comparative Bullet Lead Analysis evidence used in Kulbicki's trial). *See Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 446, 918 A.2d 470, 497–98 (2007) (Wilner, J., concurring) (characterizing a "decision" of the Court of Special Appeals "that this Court later vacated" as one with "utterly no precedential value").

Next, in *Jackson*, 216 Md. App. at 356–57, 86 A.3d at 102–03, a circuit court granted a hearing on a petition for writ of actual innocence where the petitioner alleged that Kopera's alleged perjury was "newly discovered evidence" and that Kopera's testimony bolstered critically the testifying victim's version of events. At the hearing on his petition, Jackson introduced into evidence his trial transcript, as well as the State Police Press Release, the 2007 Article, and an article published in *USA Today* entitled

---

(…continued)
(citations omitted). The majority in *Kulbicki* held that his attorneys rendered ineffective assistance of counsel when they failed to investigate and cross-examine thoroughly the State's CBLA expert because that expert co-authored a report four years prior to trial that "presaged the flaws in CBLA evidence." *Kulbicki*, 440 Md. at 40, 99 A.3d at 734. Hunt suggests that the Court's conclusion in *Kulbicki* is inapposite because "[i]t is one thing to impose upon counsel the minimum requirement of readiness to impeach an opposing party's expert on the basis of . . . a prior inconsistent *opinion*; it is another to suggest that a criminal defense attorney must do what the State suggests would be so easy to do—but apparently failed to do itself—and perform a 'thorough background investigation' to discover *fraud*." (emphasis in original). Hardy echoes Hunt's sentiment: "To require 'a thorough background investigation,' as the State puts it, from every defense counsel for every State's expert disclosed in discovery of every criminal case is unworkable. To expect it when the expert is the State's own employee is absurd. . . . A scientific report published and circulated in academic journals four years prior to trial does not equate with affirmative fraud and perjury." (citations omitted). We agree with the Respondents that the majority opinion in *Kulbicki*—which did not even mention Kopera and did not involve a § 8-301 petition for writ of actual innocence—is distinguishable. *See infra* note 25.

"Expert's Ruse Raises Legal Questions." *Jackson*, 216 Md. App. at 357, 86 A.3d at 103. The State stipulated that Jackson did not know of Kopera's perjury during his 1987 trial and that he did not learn that information until he was advised by a fellow inmate in 2010. *Id.* The petitioner argued that the evidence was not "merely impeaching" because the trial judge instructed the jury that "you must take into account the qualifications of the expert" in weighing his testimony. *Jackson*, 216 Md. App. at 357–58, 86 A.3d at 103. He argued also that he could not have discovered Kopera's perjury even with the exercise of reasonable due diligence. *Id.*

The Court of Special Appeals reviewed the lower court's decision for abuse of discretion, in light of the trial court ruling on the merits after a hearing on the petition. *Jackson*, 216 Md. App. at 363–64, 86 A.3d at 106–07. In considering the "threshold question" of whether the newly discovered evidence could have been discovered in time to move for a new trial pursuant to Rule 4-331, the intermediate appellate court concluded that Jackson needed to show that the evidence regarding Kopera's qualifications "could not have been discovered through the exercise of due diligence prior to October 1990." *Jackson*, 216 Md. App. at 364, 86 A.3d at 107. The appellate court found no abuse of discretion in the hearing judge's determination that, "[g]iven that another attorney was able to discover the misstatements, one may also conclude that [appellant] did not exercise due diligence in obtaining this readily available evidence at the time of his trial." *Jackson*, 216 Md. App. at 365, 86 A.3d at 107. It concluded also, relying on the earlier *Jackson* case (sharing coincidentally a common surname), 164 Md. App. 679, 884 A.2d 694, and *Kulbicki*, that, regardless of the jury instructions, Kopera's

26

false testimony was "merely impeaching" and Kopera's academic qualifications were not material as Kopera testified that "'ballistics is a field for which no college degree is offered,'" and the acquisition of expertise is "'usually based on experience.'" *Jackson*, 216 Md. App. at 369–71, 86 A.3d at 110–11 (quoting *Kulbicki*, 207 Md. App. at 447, 53 A.3d at 382).

Notwithstanding the court's acknowledgement that other courts have held that "where expert testimony is critical, false testimony about the expert's credentials requires a new trial," *Jackson*, 216 Md. App. at 374 n.16, 86 A.3d at 113 n.16, the appellate court concluded that Kopera's testimony was "not critical" in Jackson's trial, *id.*, and there was no significant or substantial possibility that the jury could have reached a different result had it known of his prevarication regarding his academic degrees. *Jackson*, 216 Md. App. at 373–75, 86 A.3d at 112–13. It determined that a correct statement of Kopera's qualifications would not have altered the result, as Kopera's substantive testimony did not weigh heavily in favor of either litigant and that the evidence of Jackson's guilt, without consideration of Kopera's testimony, was compelling, based on the testimony of other witnesses. *Id.*

We offer no comment on the reasoning of the hearing judge or the Court of Special Appeals in *Jackson* of 2014 as that case is not before us. We note, however, that it would not be an abuse of discretion for a hearing judge to find that a defense attorney might fail, after nonetheless exercising due diligence before the revelations of 2007, to

27

discover Kopera's alleged fraud.[25] We note also that a hearing judge might conclude reasonably that the Court of Special Appeals's distinction between "impeaching" and "merely impeaching," in the context of § 8-301 petitions for writs of actual innocence, is overly rigid.[26] When an expert is called to testify, it is conceivable that, based on the cumulative body of evidence presented at a given trial, falsity regarding the expert's credibility and qualifications might "create[] a substantial or significant possibility that the result may have been different." § 8-301(a)(1).

If the Respondents prove their newly discovered evidence and also persuade the trial judge that they could not have discovered it in time to move for a new trial pursuant to Rule 4-331, the Circuit Court must determine whether the new evidence regarding Kopera creates a substantial or significant possibility that the result of their trials may have been different. We suggest that the answer to that question depends in large part on

---

[25] At oral argument in the present cases, much discussion ensued over what constitutes reasonable trial preparation by defense attorneys. The State suggested that, as Kopera's alleged perjury could have been discovered at trial or beforehand, it should have been. Attorneys for the Respondents suggested that it is unreasonable to expect defense attorneys to be the "human resources department" for the State's employees who act as expert witnesses.

 Kopera testified for over twenty years at trials as a State's witness in his capacity as a municipal or State employee. As an objective fact, attorneys with unlimited time and resources could have discovered Kopera's fraud at any point during that time. We would avoid, however, the negative inference from the opinions of the Court of Special Appeals that no defense attorney representing a defendant at a trial in which Kopera testified exercised due diligence (prior to the discoveries made by the attorneys of the Innocence Project) in failing to discover his charade.

[26] The assumed distinction between "impeaching" and "merely impeaching" evidence was in existence at the time we decided *Douglas*, yet we still concluded that, as Douglas satisfied § 8-301's pleading standard, a hearing judge *could* conclude that Douglas could have been entitled to relief.

the particular set of facts and comprehensive body of evidence introduced at trial in each case. In some trials, Kopera's testimony may be assigned lesser value, whereas in others his testimony may have been of greater weight and consequence.

## IV. CONCLUSION

Because the Petitions filed by Hunt and Hardy satisfy the pleading standards established by § 8-301 and evaluated in *Douglas*, Respondents are entitled to hearings on their Petitions. At those hearings, if Respondents are able to prove the allegations contained in their petitions, the hearing judge may conclude that the newly discovered evidence "creates a substantial or significant possibility that the result may have been different" and "could not have been discovered in time to move for a new trial under Maryland Rule 4-331."

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONERS.**