REPORTED

IN THE COURT OF SPECIAL APPEALS
OF MARYLAND

No. 2552

September Term, 2011

---

BRIAN HAN KEYES

v.

STATE OF MARYLAND

---

Krauser, C.J.,
Berger,
Kenney, James A., III
  (Retired, Specially Assigned),

JJ.

---

Opinion by Kenney, J.

---

Filed: January 28, 2014

This appeal arises from the denial, without a hearing, of a pro se petition for writ of actual innocence filed by appellant, Brian Han Keyes, on December 27, 2011 in the Circuit Court for Prince George's County. In his petition, appellant challenges his convictions in that court related to an attempted armed robbery. For the reasons that follow, we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 1995, a jury convicted appellant of first-degree murder, attempted robbery with a deadly weapon, and use of a handgun in the commission of a crime of violence. He was sentenced to life imprisonment without possibility of parole, in addition to consecutive sentences for the other convictions.[1] A panel of this Court affirmed those judgments in an unreported opinion. *Keyes v. State*, No. 414, Sept. Term 1995 (filed Nov. 30, 1995).

In his direct appeal, he raised two allegations of error, one of which is pertinent here; namely, that the trial court erred in unduly inhibiting his cross-examination of a key State's witness, Lucio Ramirez. We shall briefly set forth facts included in the Court's earlier opinion to facilitate our analysis of the issue now before us.

---

[1] Appellant was convicted of four offenses. For first-degree murder, he was sentenced to life imprisonment without possibility of parole. His conviction of attempted robbery with a deadly weapon of the murder victim was merged into the first-degree murder conviction. *See Newton v. State*, 280 Md. 260, 273-74 (1977) (holding that "separate convictions and sentences for the felony of attempted robbery and murder committed in the perpetration of that felony constitute, under the required evidence test, double punishment for the same offense in violation of the Fifth Amendment's double jeopardy clause"). For attempted robbery with a deadly weapon of the second, surviving victim, he was sentenced to twenty years' imprisonment. For the handgun conviction, he was sentenced to twenty years' imprisonment, five years of which was without possibility of parole. All sentences were to run consecutively.

"The killing was the culmination of two-to-three hours of ethnic conflict between the victim group, consisting of the murder victim and three other Hispanic-Americans, and a group of three or four African-American males," one of whom was appellant. *Keyes v. State*, slip op. at 1. Lucio Ramirez and three others, including Abilio Ortez Chavez (the murder victim), Melvin Chavez, and José Moya-Ramirez, had been sitting in front of an apartment building, drinking beer, when they were accosted by the African-American group (including appellant). *Id.* The Hispanic-American group retreated inside to the safety of the apartment building, locking the door behind them. "The African-American males knocked on the door and tried to get in but eventually left." *Id.*

"Half an hour later," the Hispanic-American group ventured outside, only to encounter the African-American group, which by then had returned. *Id.* at 2. Once again, the Hispanic-Americans retreated inside and the African-Americans tried to force their way inside but were unsuccessful. *Id.* When the Hispanic-Americans ventured outside a third time, they encountered appellant. *Id.* The Hispanic-Americans attempted to retreat yet again, but one of them, Abilio Chavez, did not make it. "Just as he reached the front steps" of the apartment building, appellant fired "four or five shots, fatally wounding" him. *Id.*

"Each of the three surviving Hispanic-Americans made both pretrial identifications from photographs and in-trial identifications of the appellant as a member of the group that had approached them on three occasions and specifically as the shooter." *Id.* In a statement appellant made to a police detective, he "admitted that he and a friend named Sean had gone

2

to" the scene of the killing on the night in question "to 'rob Hispanics.'" *Id.* He claimed, however, that Sean was the shooter and that Sean had "acknowledged to him that he had shot 'one of the Spanish boys.'" *Id.*

At trial, appellant attempted to impeach Lucio Ramirez, based on the commission of a prior bad act, distribution of a controlled dangerous substance ("CDS"). *Keyes v. State*, slip op. at 3. Maryland Rule 5-608(b) permits, in the trial court's discretion, "any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness." The Rule further provides that, upon objection, a "reasonable factual basis" that the conduct occurred must be established and that "[t]he conduct may not be proved by extrinsic evidence."

When the State objected, pointing out that there had been no conviction for CDS distribution, appellant asserted that a conviction was not required under Rule 5-608(b) and that the charging document, under which Ramirez had been charged, indicated CDS distribution, which was an impeachable offense. *See State v. Giddens*, 335 Md. 205, 217 (1994) (holding that "a prior conviction for distribution of cocaine is relevant to credibility and as such is admissible for impeachment purposes"). "The State countered that a 'mere charging document' does not establish a conviction, but that the distribution charge had been, prior to trial, 'amended down to simple possession.'" *Keyes v. State*, slip op. at 3.

This Court upheld the trial court's ruling sustaining the State's objection and prohibited appellant from impeaching Ramirez with the charged CDS distribution activities.

The Court reasoned that the trial court was, understandably, concerned that, by permitting the proposed line of cross-examination, "the situation was rife with the danger that extrinsic evidence," namely, the charging document, "would have come in . . . through the 'back door' of the questioning itself." *Id.* at 4. Moreover, we observed that the trial court had "digested the charging document in full detail and concluded that even if the facts contained therein were proved, the result would have been a conviction for simple possession," which, unlike CDS distribution, is not an impeachable offense. *Id.* at 5 (citing *Morales v. State*, 325 Md. 330, 339 (1992) (observing that conviction for possession of PCP is "not relevant to credibility" and "would not be admissible for purposes of impeachment")). The Court also noted that the trial judge, in a sound exercise of discretion, weighed the probative value of that evidence against the unfair prejudice in admitting it and found that the latter "far outweigh[ed]" the former. *Id.*

Turning to the instant case, appellant asserts that, in September 2011, "while attending a religious service" at North Branch Correctional Institution, he engaged in a conversation with Jose Ulloa, another inmate at that facility, and learned that Ulloa possessed two reports, purportedly written by a Montgomery County Police Officer, Karen McNally, that mentioned appellant by name and had been included in the discovery materials that had been provided to Ulloa, prior to his trial. Ulloa permitted appellant to photocopy those reports, and they are now the basis of his petition for writ of actual innocence.

According to appellant, Officer McNally's reports constitute "newly discovered

4

evidence" under Maryland Code, Criminal Procedure Article, § 8-301 and "create[] a substantial or significant possibility that the result [of his trial] may have been different." He characterizes those reports as *Brady*[2] material, "which the prosecutor suppressed or withheld that would have been favorable to" him, because they were "somewhat exculpatory" and "provided the basis for impeaching two of the three State's key witnesses who testified" in his 1995 trial.

On January 18, 2012, the circuit court issued an order summarily denying appellant's petition for writ of actual innocence without a hearing, and appellant noted this appeal.

## DISCUSSION

As appellant points out, the Court of Appeals, in *Douglas v. State*, 423 Md. 156 (2011), held that a person convicted of a crime and eligible to file a petition for writ of actual innocence under Criminal Procedure Article, § 8-301 "is entitled to a hearing on the merits of" such a petition that "sufficiently pleads grounds for relief under the statute, includes a request for a hearing, and complies with the filing requirements of C.P. § 8–301(b)." *Id.* at 165. Contending that his petition satisfies all of these requirements, appellant complains that the circuit court erred in denying his petition without a hearing. We reject that contention, because, as we explain, the petition does not sufficiently plead grounds for relief under the

_____

[2]*Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

5

statute.[3]

The statute provides:

> (a) A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
>> (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
>> (2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.
>
> (b) A petition filed under this section shall:
>> (1) be in writing;
>> (2) state in detail the grounds on which the petition is based;
>> (3) describe the newly discovered evidence;
>> (4) contain or be accompanied by a request for hearing if a hearing is sought; and
>> (5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.
>
> (c)     (1) A petitioner shall notify the State in writing of the filing of a petition under this section.
>> (2) The State may file a response to the petition within 90 days after receipt of the notice required under this subsection or

---

[3]We note that, under Maryland Rule 4-332(d)(9), a petition for writ of actual innocence shall state "that the conviction sought to be vacated is based on an offense that the petitioner did not commit," a requirement not included in the petition before us. As indicated in *Douglas v. State*, 423 Md. 156, 182 n.14 (2011), Rule 4-332 became effective on October 1, 2011 and applies to all petitions filed on or after that date, as was the petition in this case. Because the circuit court did not grant leave to amend the petition prior to dismissing it, *see* Md. Rule 4-332(h) (stating that amendments "shall be freely allowed in order to do substantial justice"), and made no mention in its order as to the reasons it denied the petition, we do not rely upon noncompliance with Rule 4-332 for affirmance.

within the period of time that the court orders.

(d)     (1) Before a hearing is held on a petition filed under this section, the victim or victim's representative shall be notified of the hearing as provided under § 11-104 or § 11-503 of this article.

       (2) A victim or victim's representative has the right to attend a hearing on a petition filed under this section as provided under § 11-102 of this article.

(e)     (1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.

       (2) The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted.

(f)     (1) In ruling on a petition filed under this section, the court may set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate.

       (2) The court shall state the reasons for its ruling on the record.

(g) A petitioner in a proceeding under this section has the burden of proof.

Md. Code (2001, 2008 Repl. Vol., 2012 Supp.), § 8-301 of the Criminal Procedure Article ("CP").

Subsection (e)(1) states that, "[e]xcept as provided in paragraph (2) of this subsection," a circuit court "shall" hold a hearing on an actual innocence petition if it "satisfies the requirements of subsection (b) of this section and a hearing was requested." Paragraph (2) authorizes the circuit court to dismiss an actual innocence petition without a hearing if it finds "that the petition fails to assert grounds on which relief may be granted."

7

"Grounds" on which relief may be granted are set forth in subsection (a): a claim of "newly discovered evidence" that both "creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined" and "could not have been discovered in time to move for a new trial under Maryland Rule 4-331."

Here, with the previously noted exception, the form requirements of subsection (b) have been met—the petition is in writing; it states in detail the grounds on which it is based; it describes in detail the purported newly discovered evidence and attaches that evidence as exhibits to the petition; it contains a request for a hearing; and, as it is appellant's first such petition under CP § 8-301, the requirement, under CP § 8-301(b)(5), that it "distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions," is not applicable. *See Douglas*, 423 Md. at 184-85 & n.16 (interpreting "prior petitions," under CP § 8-301(b)(5), as including only petitions brought under the statute and not including postconviction petitions).[4]

Thus, the question before us is whether "the petition sufficiently pleads grounds for relief under the statute." *Id.* at 165. CP § 8-301(a)(1)-(2), which defines such "grounds," re-frames the question, more specifically, as: does appellant's petition present "newly discovered evidence" that both "creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined" and "could not

---

[4]Appellant filed a petition seeking postconviction relief, under CP § 7-101 *et seq.*, which was denied.

have been discovered in time to move for a new trial under Maryland Rule 4-331"? Only if this question is answered in the affirmative is a hearing required.

Having construed the petition liberally, as instructed by the *Douglas* Court, 423 Md. at 182-83, we conclude that much of the claimed "newly discovered evidence" asserted in appellant's petition is not, in fact, "newly discovered evidence" and that the remainder, even if "newly discovered," fails to "create[] a substantial or significant possibility that the result may have been different."[5] Therefore the petition does not sufficiently plead grounds for relief under CP § 8-301.

Because CP § 8-301 is of recent vintage, we look to cases interpreting and applying Maryland Rule 4-331 (or its federal counterpart, Federal Rule of Criminal Procedure 33), which governs motions for new trial, including motions grounded upon claims of newly discovered evidence. Indeed, CP § 8-301 directs us to do so. *See id.* § (a)(1) (defining the

---

[5]In its brief, the State contends that "[a]t no point did [appellant] allege, let alone provide a basis upon which the circuit court could find, that the evidence that he claimed to be newly discovered could not have been discovered within the time frame set forth in Rule 4-331." Appellant, however, asserts in his petition that the State committed a *Brady* violation in suppressing Officer McNally's reports and that he did not, in fact, become aware of those reports until September 18, 2011. Contrasted with *Douglas v. State*, 423 Md. 156, 187 (2011), where the Court of Appeals observed that "evidence that is known but unavailable does not constitute 'newly discovered evidence,'" the evidence here is alleged to be both unknown (to appellant) and unavailable. Construing appellant's pro se petition liberally, *see id.* at 182-83, it is reasonable to infer that appellant is asserting that he acted with due diligence, or, in the words of CP § 8-301(a)(2), that the evidence "could not have been discovered in time to move for a new trial under Maryland Rule 4-331." Consequently, in affirming the circuit court's denial of appellant's petition, we do not rely upon appellant's failure to plead to or exercise due diligence in discovering the evidence.

9

persuasiveness standard as whether newly discovered evidence "creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined"); *id.* § (a)(2) (defining a due diligence standard by express reference to Rule 4-331).

At the outset, we recognize that, generally, appellate review of a circuit court's denial of a motion for new trial is limited to whether the trial court abused its discretion, *see Campbell v. State*, 373 Md. 637, 665 (2003), but, because the issue before us is the legal sufficiency of the petition, our review is de novo.[6] That said, caselaw addressing motions for new trial, on the grounds of newly discovered evidence, is instructive in determining what is "newly discovered evidence" and when it is sufficiently persuasive so as to "create[] a

---

[6]*Douglas* is, thus far, the only reported Maryland opinion addressing the legal sufficiency of an actual innocence petition. Although that opinion does not expressly recite the standard of review it applied, a fair reading indicates that the *Douglas* Court applied a de novo standard. 423 Md at 177-88. For example, at the conclusion of its opinion, the *Douglas* Court stated that "decisions on the **merits** of requests for new trials based on newly discovered evidence, whether filed pursuant to Rule 4–331 or . . . C.P. § 8–301, are committed to the hearing court's sound discretion." *Id.* at 188 (emphasis added). By negative inference, it follows that decisions as to the legal sufficiency of an actual innocence petition would be reviewed de novo.

This conclusion is consistent with decisional law covering a wide range of subjects. *See*, *e.g.*, *United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 67 (2006) (observing that appellate court reviewing grant of summary judgment "examines the same information from the record and determines the same issues of law as the trial court" and, thus, applies de novo review); *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n*, 388 Md. 500, 509 (2005) (observing that appellate court "review[s] the grant of a motion to dismiss *de novo*") (citation omitted); *Calomiris v. Woods*, 353 Md. 425, 434 (1999) (observing that "the determination of ambiguity [in a contract] is one of law, not fact, and that determination is subject to *de novo* review by the appellate court").

10

substantial or significant possibility that the result may have been different."

We begin with the observation that many of the facts alleged in appellant's petition took place months after his trial, which concluded on March 15, 1995. For example, according to Exhibit A of the petition, which purported to cover Officer McNally's observations during the time period from August 19, 1995 through August 29, 1995,

> CI informant called and told me that a subject by the name of Alfonso Martinez was at [address redacted] on 8-18-95 at about 1500 hrs. argueing (sic) with Melvin about the fact that he had encroached on other dealers['] territory, which the CI claims is the motive for the shootings. Martinez is a dealer and lives at [address redacted]. He also have (sic) a lady friend who lives at [address redacted] in Langley Park.

Later in that report, it states: "Writer observed Tigre at AH Bacon Funeral home on 14th St. on 8-27-95. He came with a group of 8-10 drug seller/gang types." And, in Exhibit B, dated September 11, 1995, it states that, beginning in April 1995, Lucio Amaya "moved up quickly to the top with the help of Melvin Chavez" and became a "big time" drug dealer in Langley Park.

Even if we assume the authenticity, accuracy, and truthfulness of those reports, it is clear that those events took place after appellant was convicted and sentenced. They could have had no effect on his trial and, thus, do not qualify as "newly discovered evidence." Although we found no Maryland authority expressly so holding, the United States Court of Appeals for the District of Columbia Circuit, in affirming the denial of a new trial motion, considered a similar issue and reached precisely that conclusion. *See United States v.*

11

*Lafayette*, 983 F.2d 1102, 1105 (D.C. Cir. 1993) (observing that, "[i]n general, to justify a new trial, 'newly discovered evidence' must have been in existence at the time of trial" and that "[e]vents and transactions occurring after the trial obviously could not have been the subject of testimony at the trial").

We turn now to those parts of appellant's petition that are based upon alleged events taking place prior to his trial and sentencing. Exhibit A of the petition states in part:

> Writer is personally familiar with all victims with exception of Jose Amaya. Melvin Chavez, Lucio Amaya and José Amicar Moya Ramirez were all eye witnesses to an 0100 in Prince George's County in August 1994—victim Abilio Ortez Chavez (no relation to Melvin Chavez) although all are from same area in Honduras.[7] Writer had constant contact with witnesses for six months and throughout the trial of Brian Han Keyes who was found guilty and got life plus 40 years. The writer, P.G. Detectives and [Assistant State's Attorney] were aware of the fact that Melvin and Lucio were involved with drugs and that Abilio Ortez "Lito" was an innocent victim who was at the wrong place at the wrong time. The writer was responsible for all aspects of witness interviews, Photo arrays, transportation of witnesses and making arrangements for witnesses to return from Honduras and Denver, Colorado for trial. Writer also assisted P.G. County Police in relocating witnesses.

In Exhibit B, it is stated that, according to a confidential informant, "from the time of the arrest of Brian Han Keyes in August 94 until approx. Feb. or March of 95," Ramirez

---

[7]The State does not appear to contest that the person identified as "Lucio Amaya" is the same person as "Lucio Ramirez," the witness at appellant's trial. The reference to "an 0100" is law enforcement jargon for a murder. *See*, *e.g.*, "Worksheet for Pretrial Services Report," at 8 (listing, among "Case Type and Offense Codes," "0100" as "Murder, First Degree") (available at http:nj.fd.org/pdf/forms/iv-5 worksheet for ptsr.pdf) (last visited Dec. 11, 2013).

"was a small time seller in Langley Park." The informant further stated that "about two weeks before the 0100" he "saw Lucio in front of the Laundrymat next to Nations Bank in Langley Park at about 1400 hrs." According to the report, the confidential informant approached Ramirez and engaged in a brief conversation, during which another, unnamed, person approached and "began 'negotiating' with [Ramirez]" and that, during that negotiation, "they discussed prices between $23,000 and $25,000.00."

To the extent that these reported events and facts that took place prior to appellant's trial and sentencing might be generally considered "newly discovered evidence," under Maryland Rule 4-331, they would be "merely impeaching" evidence, which does not satisfy the requirements of CP § 8-301(a)(1). *See Argyrou v. State*, 349 Md. 587, 601 (1998) (observing that, to entitle defendant to new trial, newly discovered evidence "must be more than merely cumulative or impeaching") (citation and quotation omitted); *Love v. State*, 95 Md. App. 420, 432 (1993) (same).

In *Jackson v. State*, 164 Md. App. 679, 697 (2005), *cert. denied*, 390 Md. 501 (2006), we considered what we characterized as the "pivotally important" distinction between "impeaching" and "merely impeaching" evidence, in the context of a motion for new trial on the ground of newly discovered evidence. We said:

> Newly discovered evidence that a State's witness had a number of convictions for crimes involving truth and veracity or had lied on a number of occasions about other matters might have a bearing on that witness's testimonial credibility, but would not have a direct bearing on the merits of the trial under review. Such evidence would constitute collateral impeachment and

13

would, therefore, be "merely impeaching." If the newly discovered evidence was that the State's witness had been mistaken, or even deliberately false, about inconsequential details that did [not] go to the core question of guilt or innocence, such evidence would offer peripheral contradiction and would, therefore, be "merely impeaching." If the newly discovered evidence, on the other hand, was that the State's witness had actually testified falsely on the core merits of the case under review, that evidence, albeit coincidentally impeaching, would be directly exculpatory evidence on the merits and could not, therefore, be dismissed as "merely impeaching."

*Id.* at 697-98.

Here, with one exception, appellant's petition presents allegations which, if believed, might have established that a State's witness was a "big time" drug dealer rather than a mere drug user. Such conduct by a State's witness could have established a basis for impeaching his testimony under Maryland Rule 5-608(b), as appellant unsuccessfully attempted to do at his trial. *Keyes v. State*, slip op at 3. But such evidence falls far short of having "a direct bearing on the merits of the trial under review." *Jackson*, 164 Md. App. at 698. As the Court of Appeals concluded in *Campbell v. State*, 373 Md. 637, 671-72 (2003): "Even if the additional evidence 'may' produce a different result at a new trial, there is not a 'substantial or significant possibility' that it would do so."

That leaves one remaining allegation. According to appellant, Officer McNally's reports suggest that a State's witness received leniency in exchange for his testimony and that fact was not revealed during trial, but appellant's petition contains no factual support for that allegation. Indeed, and as the State contends, appellant's contention that "the newly

14

discovered evidence shows that both Lucio [Ramirez] and Melvin [Chavez]" received "substantial" benefits in exchange for their testimony against appellant—that their CDS distribution charges were placed on the stet docket—is simply a bald assertion. If a conclusory allegation, unsupported by evidence, is deemed sufficient to state grounds for relief under CP § 8-301(a), then the requirement of CP § 8-301(e)(2) that the petition "assert grounds on which relief may be granted" would be easily circumvented. We conclude that the circuit court was not required to consider a bald, unsupported factual allegation, and, to the extent it may not have done so, it did not err in denying the petition without a hearing.

**ORDER DENYING PETITION FOR WRIT OF ACTUAL INNOCENCE AFFIRMED. COSTS ASSESSED TO APPELLANT.**