REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 665

September Term, 2014

---

MAYNARD SNEAD

v.

STATE OF MARYLAND

---

Woodward,
Kehoe,
Arthur,

JJ.

---

Opinion by Arthur, J.

---

Filed: July 30, 2015

Pursuant to Md. Code (2001, 2008 Repl. Vol., 2015 Supp.), § 8-301 of the Criminal Procedure Article ("C.P."), a person convicted of a crime may file a petition for writ of actual innocence "if the person claims that there is newly discovered evidence that," among other things, "creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined[.]" C.P. § 8-301(a)(1).

Maynard Snead, a prisoner proceeding pro se, petitioned for a writ of actual innocence in the Circuit Court for Baltimore City. On April 22, 2014, the court dismissed his petition without a hearing. The court relied on this Court's opinion in *Keyes v. State*, 215 Md. App. 660, 673, *cert. denied*, 438 Md. 144 (2014), which affirmed the dismissal of a petition without a hearing where the newly-discovered evidence would merely have impeached the testimony of a witness for the prosecution. Snead appealed.

While the appeal was pending, the Court of Appeals issued its opinion in *State v. Hunt and Hardy*, ___ Md. ___, Nos. 72 & 73, Sept. Term 2014, 2015 WL 3777601 (June 18, 2015). In that case, the Court of Appeals re-affirmed its decision in *Douglas and Curtis v. State*, 423 Md. 156 (2011), that if a petition for a writ of actual innocence substantially complies with the relevant pleading requirements, a court may not deny the petition without a hearing. In reaching its decision, the Court stated that, even after a hearing on the merits, a petition is not necessarily doomed because it relies on evidence that "merely impeaches" a witness, as opposed to evidence that directly exculpates a criminal defendant. *See Hunt*, 2015 WL 3777601, at *9. In so doing, the Court implied

that a court should not dismiss a petition because it cites evidence that "merely impeaches" a witness, but does not directly exculpate the defendant. *See id.*

Because the circuit court dismissed Snead's petition on account of his failure to meet a standard that no longer appears to apply, we vacate the order that dismissed his petition and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Snead's Convictions

On December 22, 1998, a man pointed a semi-automatic handgun into a crowd of people standing at a bus stop on the 2400 block of East Fayette Street in Baltimore City. He fired several shots, hitting three persons. One of the victims, Timothy Thornton, recognized the shooter as someone he had previously seen in the neighborhood. Later, Thornton positively identified Snead from a photo array as the shooter.

Snead was charged with attempted murder and other offenses related to the incident.[1] He made a number of discovery requests, including a motion to produce documents and a motion for disclosure of exculpatory oral communications. At trial, Thornton testified that Snead was the person who shot him.

On May 25, 2000, a jury in the Circuit Court for Baltimore City convicted Snead of assault in the first degree, openly carrying a handgun, use of a handgun in the

---

[1] The circuit court's docket states that Snead is also known by the name "Sneed." Some filings in this case use the name "Sneed."

commission of a crime of violence, possession of a regulated firearm by a person with a disqualifying conviction, and three counts of reckless endangerment. The court sentenced Snead to an aggregate prison term of 35 years. This Court later affirmed his convictions in an unreported opinion. *Snead v. State*, No. 680, Sept. Term 2000 (filed May 7, 2001). The Court of Appeals denied a petition for certiorari.

In 2009, Snead petitioned for post-conviction relief. The circuit court denied that petition in 2012, and this Court denied his application for leave to appeal in 2013.[2]

**B. Snead's Petition for Writ of Actual Innocence**

On April 1, 2014, Snead filed a petition for writ of actual innocence, proceeding pro se in the Circuit Court for Baltimore City. Snead claimed that he did not commit the crimes for which he was convicted and that there was newly-discovered evidence that created a substantial or significant possibility that the result of his trial would have been different had the evidence been discovered before his trial.

Snead attached a set of documents as exhibits to his petition. All but one of the documents are database entries[3] made by Detective Raymond Hunter of the Baltimore City Police Department. The reports document Detective Hunter's investigation of the December 1998 shooting and, in particular, his conversations with the victim, Thornton,

---

[2] The record of Snead's post-conviction proceeding is not before this Court. Snead's petition for writ of actual innocence states that one issue in the post-conviction proceeding was whether the State had fulfilled its disclosure obligations.

[3] Snead describes the database as "Lotus Notes."

between February and October 1999.

According to Detective Hunter's reports, Thornton advised the detective on February 22, 1999, that the person who shot him "hangs at the corner of Collington and Jefferson streets" and wears "an army fatigue jacket." One report states:

> On 25 Feb 1999 @ 1930 hrs, this detective spoke with the victim Timothy Thornton. Same advised this detective that he saw the person who shot him at the corner of Collington and Jefferson Street wearing a black sweat suit. Same also provided this detective with the street name O.G. for the suspect. . . .

Another report states that the detective received additional information from Thornton on February 27, 1999. According to Thornton, one Leroy Milton, a person who was present at the shooting but not one of the victims, told Thornton that the shooter had been arrested outside of a bar on the previous day.

In his petition, Snead alleged that these reports came into his possession when they were accidentally included during discovery in connection with a separate prosecution "long after this case was adjudicated." Snead alleged that he was incarcerated in February 1999, when the witnesses claimed to have seen the shooter, and thus he could not have been at either of the locations cited in the detective's notes. According to Snead, therefore, this evidence showed that Thornton and Milton identified someone other than Snead as the shooter.[4]

---

[4] The State's brief construes the petition as alleging that Snead was incarcerated at
(continued...)

Snead further alleged that, at his trial, Detective Hunter had testified that Thornton never informed him that he had spotted the person who shot him. Snead also alleged that, according to the detective, Thornton did not provide a description of the shooter's appearance. Snead argued that the detective's undisclosed reports were "exculpatory to the extent that they show [Snead] could not have been the shooter and/or that perjury was committed to gain th[e] conviction[.]"[5]

## C.    **Dismissal of Snead's Petition**

The State did not file a response to Snead's petition. On April 16, 2014, the circuit court issued an order stating that Snead's petition failed to describe newly-discovered evidence. The court concluded that "the newly discovered evidence alleged by the Petitioner has no 'direct bearing on the merits of the trial under review,' *Keyes v. State*, 215 Md. App. 660, 673 (2014), citing *Jackson v. State*, 164 Md. App. 679, 698 (2005)." Consequently, the court dismissed Snead's petition, without a hearing, pursuant to C.P. § 8-301(e)(2), for failure to assert grounds upon which the petition could be granted.

On April 22, 2014, Snead noted a timely appeal from that order.

---

[4] (...continued) the time of the December 1998 shooting. In fact, Snead alleges that he was incarcerated in February 1999, at the times when witnesses reported that they identified the person who had shot them three months earlier. Snead did not allege that he had an alibi for the shooting, but that witnesses made an exculpatory identification.

[5] The petition's final exhibit was a hand-drawn diagram of the 2400 block of Fayette Street, marking the location of shell casings and of one victim. According to the petition, the location of the shell casings demonstrates that they could not have come from the shooting.

Snead's appeal presents a single question: Did the circuit court err in dismissing the petition for writ of actual innocence without a hearing?[6]

In concluding that the evidence described in Snead's petition did not meet the standard for "newly discovered evidence," the court relied on a line of cases that the Court of Appeals has since limited. In light of the Court's opinion in *State v. Hunt and Hardy*, ___ Md. ___, Nos. 72 & 73, Sept. Term 2014, 2015 WL 3777601 (June 18, 2015), we vacate the circuit court's order and remand for further proceedings.

## DISCUSSION

### A.      Petition for Writ of Actual Innocence

In criminal cases in a Maryland circuit court, a defendant may move for a new trial within ten days after a verdict. Md. Rule 4-331(a). After that ten-day period has passed, a court may "grant a new trial or other appropriate relief on the ground of newly discovered evidence which could not have been discovered by due diligence" within ten

---

[6] As stated in Snead's brief, the question presented is:

Due to the Appellant's blindness and the fact that trial counsel testified she had never seen any "Lotus Notes" prior to or during trial, and regarding the fact that this "Lotus Note" contained impeachment and possibly exculpatory evidence, would this allow it to be deemed "newly discovered evidence" through the trial counsel's and Appellant's having never before reviewed this note prior to or during trial, and the blind Appellant never having it brought to his attention until recently was not able to present it at any previous review?

days after the verdict. Md. Rule 4-331(c). Generally, a person must move for a new trial based on newly-discovered evidence within one year after the court's imposition of sentence or after the date the court receives a mandate issued by the final appellate court to consider a direct appeal from the judgment, whichever is later. Md. Rule 4-331(c)(1).

A petition for writ of actual innocence is a collateral, civil proceeding through which a criminal defendant may, at any time, challenge his or her conviction, sentence, or imprisonment. *State v. Seward*, 220 Md. App. 1, 16-17 (2014), *cert. granted*, 441 Md. 666 (2015). The authorizing statute provides:

> **Claims of newly discovered evidence**
>
> (a) A person charged by indictment or criminal information with a crime triable in circuit court and convicted of that crime may, at any time, file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence that:
>
>     (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined; and
>
>     (2) could not have been discovered in time to move for a new trial under Maryland Rule 4-331.

C.P. § 8-301(a).

An actual innocence petition must: "(1) be in writing; (2) state in detail the grounds on which the petition is based; (3) describe the newly discovered evidence; (4) contain or be accompanied by a request for hearing if a hearing is sought; and (5) distinguish the newly discovered evidence claimed in the petition" from evidence claimed

in any prior petition for actual innocence. C.P. § 8-301(b). For petitions filed on or after October 1, 2011, Rule 4-332 sets forth a number of additional substantive requirements. *See Hunt*, 2015 WL 3777601, at \*5.

"The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted." C.P. § 8-301(e)(2); *see* Md. Rule 4-332(i)(1)(A) (providing that "the court may dismiss the petition if it finds as a matter of law that the petition fails to comply substantially with the requirements of [Rule 4-322(d)] or otherwise fails to assert grounds on which relief may be granted"). If, however, the petition satisfies the requirements of section 8-301(b) and a hearing was requested, the court must hold a hearing. C.P. § 8-301(e)(1). At a hearing on the merits, the petitioner bears the ultimate burden of proof. C.P. § 8-301(g). If the petitioner meets that burden, "the court may set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate." C.P. § 8-301(f)(1).

In *Douglas and Curtis v. State*, 423 Md. 156, 165 (2011), the Court of Appeals recognized that the denial of a petition for writ of actual innocence is an appealable final judgment. In that consolidated case, the Court reviewed two petitions for writs of actual innocence that circuit courts had dismissed without a hearing. Construing the standard for dismissal expressed in section 8-301(e)(2), the Court explained that the statute requires only "that a petition 'assert' grounds for relief; it does not require the petitioner to satisfy the burden of proving those grounds in the papers submitted." *Id.* at 179. In

assessing whether a petition satisfies the pleading requirement, the circuit court must "determine whether the allegations could afford a petitioner relief, if those allegations would be proven at a hearing," after viewing "the facts in the light most favorable to the petitioner and accepting all reasonable inferences that can be drawn from the petition." *Id.* at 180.

Because the two petitioners in that case were both pro se inmates, the Court stated that a court should liberally construe their petitions. *See id.* at 182-83 (citing *State v. Matthews*, 415 Md. 286, 298 (2010)). Applying that standard to Douglas's petition, the Court held that Douglas adequately "alleged grounds that, if proven, could entitle him to relief." *Douglas*, 423 Md. at 185.

Douglas had made assertions, supported by a newspaper article published many years after his trial, that a ballistics expert had falsified his credentials at his trial and hundreds of other trials. "[V]iewing the inferences in the light most favorable to Douglas," the Court held that "it could be that [this] evidence could not have been discovered within time to move for a new trial under Rule 4-331." *Id.* at 186. Furthermore, the Court held that the "allegations assert a basis that the newly discovered evidence 'creates a substantial or significant possibility that the result [of Douglas's trial] may have been different.'" *Id.* (quoting C.P. § 8-301(a)(1)). Accordingly, even though "it [did] not follow automatically that he [could] prove his claim" on the merits, the Court

-9-

held that Douglas was entitled to a hearing on his petition. *Douglas*, 423 Md. at 186.[7]

*Douglas* did not explicitly announce a standard of appellate review of decisions rejecting petitions for writs of actual innocence, but subsequent cases have established that the standard depends on whether the court denied the petition after a hearing on the merits or dismissed the petition without a hearing because of the insufficiency of the pleadings. If the circuit court denies the petition after a hearing, the appellate court reviews that decision for abuse of discretion. *See Ward v. State*, 221 Md. App. 146, 156 (2015); *Yonga v. State*, 221 Md. App. 45, 56, *cert. granted*, 442 Md. 515 (2015); *Seward*, 220 Md. App. at 25; *Jackson v. State*, 216 Md. App. 347, 363, *cert. denied*, 438 Md. 740 (2014). On the other hand, if the circuit court dismisses the petition without a hearing based on the legal sufficiency of the pleadings, we review the decision de novo. *See Hunt*, 2015 WL 3777601, at *4; *Hawes v. State*, 216 Md. App. 105, 133 (2014); *Keyes*, 215 Md. App. at 669-70.

### B.      Distinction Between "Impeaching" and "Merely Impeaching" Evidence

In dismissing Snead's petition without a hearing, the circuit court relied on this Court's decision in *Keyes* to conclude that the evidence described in his pleadings "ha[d] no 'direct bearing on the merits of the trial under review.'" *Keyes*, 215 Md. App. at 673

---

[7] The Court reached a different conclusion with respect to Curtis, the other petitioner in that consolidated case. Curtis based his petition on an affidavit in which his grandmother contradicted the testimony of a police witness. *Douglas*, 423 Md. at 186-87. The Court reasoned that the grandmother's statement was not "newly discovered" evidence because that information was known to Curtis after his trial. *Id.* at 187.

(quoting *Jackson v. State*, 164 Md. App. 679, 698 (2005), *cert. denied*, 390 Md. 501 (2006)).  On appeal, the State, too, relies almost entirely upon *Keyes*, arguing that Snead's evidence would have merely impeached other testimony, but could not have created a substantial or significant possibility of a different result.  In light of *Hunt*, however, a petition is not necessarily doomed, even on a hearing on the merits, solely because it depends on evidence that "merely" impeaches a witness's testimony.  *Hunt*, 2015 WL 3777601, at *9.  It follows that a circuit court should not dismiss a petition on that ground, as long as the pleading substantially complies in all other respects with the requirements for a petition for a writ of actual innocence.

The distinction between evidence that is "impeaching" and evidence that is "merely impeaching" arose in the context of appellate review of a circuit court's discretionary decision to deny a motion for a new trial after a hearing under Rule 4-331.  In *Jackson*, 164 Md. App. at 688, the petitioner moved for a new trial on the ground that, one day after his conviction for child sexual abuse, the victim told a family member that her parents had pressured her into testifying.  At a hearing on the merits of that motion, however, the victim herself denied making any such statement to the family member.  *Id.* at 692-93.  Under those circumstances, we reasoned that because the alleged statement could serve only as collateral impeachment evidence of the victim's testimony, the circuit court did not abuse its discretion in holding that the family member's statement was insufficiently material to warrant a new trial.  *See id.* at 695-99.  Writing for the Court,

-11-

Judge Moylan stated:

> The distinction between "impeaching" and "merely impeaching," albeit nuanced, is pivotally important. Newly discovered evidence that a State's witness had a number of convictions for crimes involving truth and veracity or had lied on a number of occasions about other matters might have a bearing on that witness's testimonial credibility, but would not have a direct bearing on the merits of the trial under review. Such evidence would constitute collateral impeachment and would, therefore, be "merely impeaching." If the newly discovered evidence was that the State's witness had been mistaken, or even deliberately false, about inconsequential details that did to [sic] go to the core question of guilt or innocence, such evidence would offer peripheral contradiction and would, therefore, be "merely impeaching." If the newly discovered evidence, on the other hand, was that the State's witness had actually testified falsely on the core merits of the case under review, that evidence, albeit coincidentally impeaching, would be directly exculpatory evidence on the merits and could not, therefore, be dismissed as "merely impeaching."

*Jackson*, 164 Md. App. at 697-98.

Later, in *Keyes*, this Court imported this distinction into a case concerning the propriety of a decision to dismiss a petition for writ of actual innocence without a hearing. Years after his trial and direct appeal, Keyes came into the possession of police reports that the State had failed to disclose before his trial, but had included in discovery materials sent to another inmate. *Keyes*, 215 Md. App. at 664-65. Keyes petitioned for a writ of actual innocence, contending that the information would have allowed him to impeach an important witness because of his prior bad acts as "a 'big time' drug dealer." *Id.* at 673. After quoting at length the foregoing passage from *Jackson*, the Court reasoned that the evidence described in Keyes's petition was "merely" impeachment evidence and did not amount to grounds for relief under the actual innocence statute. *Id.*

-12-

at 672-73. Reasoning that the evidence did not have "'a direct bearing on the merits of the trial under review'" (*id.* at 673 (quoting *Jackson*, 164 Md. App. at 698)), this Court affirmed the dismissal of the petition, without a hearing. *See id.*

Since *Keyes*, this Court has employed this distinction in two cases in which a circuit court denied an actual innocence petition on the merits. *See Ward*, 221 Md. App. at 156-57, 168-69 (vacating denial of actual innocence petition and reasoning that newly-discovered scientific studies that criticized use of comparative bullet lead analysis were directly exculpatory and could not be disregarded as "merely impeaching"); *Jackson*, 216 Md. App. at 367-69 (holding that trial court did not abuse its discretion in denying petition for writ of actual innocence after hearing, and reasoning that evidence that ballistics expert had falsified his qualifications was "not material, but merely impeaching").

Most recently, in *Hunt*, 2015 WL 3777601, at *9-12, the Court of Appeals expressed skepticism about the conceptual distinction used by this Court. According to the petitioners in that case, newly-discovered evidence showed that the State's ballistics expert gave perjured testimony about his credentials. *Id.* at *7.[8] After holding that these allegations could entitle the petitioners to relief, the Court went on to explain that the

---

[8] The same high-ranking ballistics expert, Joseph Kopera, allegedly gave false testimony about his credentials in four of the trials mentioned here. *Hunt*, 2015 WL 3777601, at *2 (Hunt's petition); *id.* at *3 (Hardy's petition); *Douglas*, 423 Md. at 167; *Jackson*, 216 Md. App. at 356-57.

petitioners were "not doomed necessarily because the newly discovered evidence . . . may

be only 'impeaching.'" *Id.* at \*9. Instead, the Court concluded that evidence of "falsity

regarding the expert's credibility or qualifications might 'create[] a substantial or

significant possibility that the result may have been different.' [C.P.] § 8-301(a)(1)."

*Hunt*, 2015 WL 3777601, at \*12.

By way of well-considered dicta, the Court then recounted this Court's

development and application of the distinction between "impeaching" and "merely

impeaching" evidence. *See id.* at \*9-12 (describing *Jackson*, 164 Md. App at 697-98, and

*Jackson*, 216 Md. App. 347).[9] While declining to comment upon the reasoning of those

cases, the Court noted "that a hearing judge might conclude reasonably that the Court of

Special Appeals's distinction between 'impeaching' and 'merely impeaching,' in the

context of § 8-301 petitions for writs of actual innocence, is overly rigid." *Hunt*, 2015

WL 3777601, at \*12. The Court added: "The assumed distinction between 'impeaching'

and 'merely impeaching' evidence was in existence at the time we decided *Douglas*, yet

we still concluded that, as Douglas satisfied § 8-301's pleading standard, a hearing judge

could conclude that Douglas could have been entitled to relief." *Id.* at \*12 n.26. In other

words, even though it is arguable that the evidence in *Douglas* was no more than "merely

impeaching," the Court was not deterred from reversing the decision to dismiss his

---

[9] The appellants in the 2005 *Jackson* case and the 2014 *Jackson* case are unrelated, but coincidentally share the same surname.

petition without a hearing. *Id.*

The Court of Appeals's comments in *Hunt* are in tension with this Court's analysis in *Keyes*. In *Keyes*, 215 Md. App. at 672-73, we concluded that the petitioner's pleadings were legally insufficient and that it was permissible to dismiss the petition without a hearing, because the allegations would have merely impeached the credibility of a prosecution witness. In *Hunt*, by contrast, the Court of Appeals stated that a petition is "not doomed necessarily" even on the merits simply "because the newly discovered evidence . . . may be only 'impeaching.'" *Hunt*, 2015 WL 3777601, at *9. To the contrary, as long as a court could reasonably conclude that the newly-discovered evidence, if believed, could create a substantial or significant possibility of a different result, the court may not dismiss a petition based on the "overly rigid" classification of the type of evidence described. *See id.* at *12.

Returning to the instant case, we hold that, in light of the intervening decision in *Hunt*, the circuit court was legally incorrect in concluding that Snead's petition failed to describe newly-discovered evidence within the meaning of C.P. § 8-301. The allegations in Snead's petition, if believed, could show that a detective testified falsely at Snead's trial regarding identifications made by the victim. *See Hunt*, 2015 WL 3777601, at *12; *Douglas*, 423 Md. at 186. Moreover, the evidence, if believed, could tend to exculpate Snead by showing that the victim had identified someone other than Snead as the shooter. *See Hawes*, 216 Md. App. at 135-36 (holding that undisclosed police report, documenting

-15-

interview in which eyewitness indicated that she was unable to identify shooter, could create a substantial or significant possibility of different result if believed).[10]  Viewing the allegations in the light most favorable to Snead and accepting all reasonable inferences that are to be drawn from the petition, we conclude that Snead has claimed "a basis that the newly discovered evidence 'creates a substantial or significant possibility that the result [of Snead's trial] may have been different.'"  *Douglas*, 423 Md. at 186 (quoting C.P. § 8-301(a)(1)).  Accordingly, we vacate the judgment and remand for further proceedings.

Because the circuit court decided the case solely on the ground that the evidence described in the petition was inadequate under *Keyes*, we express no opinion on the legal sufficiency of the other aspects of Snead's petition, including whether Snead adequately alleged that he could not have discovered the newly-discovered evidence in time to move for a new trial under Rule 4-331.  *See* Md. Rule 4-322(d)(6); *Hawes*, 216 Md. App. at 136.

---

[10] The decision in *Hunt* makes it unnecessary to analyze whether the evidence described by Snead was, in fact, "impeaching" or "merely impeaching," as this Court has used those terms in cases such as *Keyes*.  *Keyes*, however, may have been distinguishable even without the Court's recent clarification.  The evidence described by Snead was much more directly related to the merits of his case than the evidence described by Keyes.  Unlike Keyes, Snead did not only seek to attack the credibility of the detective and the victim; he also sought to show that the detective had testified falsely and that the victim actually had identified a different person as the shooter.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**