*State of Maryland v. Jeffrey D. Ebb, Sr.*, No. 40, September Term 2016, Opinion by Hotten, J.

**CRIMINAL LAW — POSTCONVICTION RELIEF — PETITION FOR WRIT OF ACTUAL INNOCENCE — PLEADING REQUIREMENTS — STATEMENT OF INNOCENCE**

Court of Appeals held that a petition filed under Md. Code, Criminal Procedure Article ("Crim. Proc.") §8-301 must "substantially comply" with pleading requirements contained in Md. Code, Crim. Proc. §8-301(b) and Maryland Rule 4-332(d).

**CRIMINAL LAW — POSTCONVICTION RELIEF — PETITION FOR WRIT OF ACTUAL INNOCENCE — PLEADING REQUIREMENTS — LEAVE TO AMEND**

Court of Appeals held that when a petition filed pursuant to Crim. Proc. §8-301 "substantially complies" with the pleading requirements contained in Maryland Rule 4-332(d), but fails to include a statement "that the convictions sought to be vacated are based on an offense the petitioner did not commit[,]" the petitioner may amend his or her petition to comply with the mandatory pleading requirement in Maryland Rule 4-332(d)(9), if the circuit court determines that allowing the amendment would do substantial justice. In the case at bar, the Court of Appeals held that because Respondent's petition "substantially complied" with the pleading requirements contained in Maryland Rule 4-332(d), but did not include an averment of Respondent's innocence, the case must be remanded to the circuit court to determine whether Respondent may amend his petition to comply with the mandatory pleading requirement contained in Maryland Rule 4-332(d)(9). Respondent is not entitled to a hearing unless the circuit court determines that amending his petition to comply with the mandatory pleading requirement in Maryland Rule 4-332(d)(9) would do substantial justice, and must articulate its reasoning on the record.

**CRIMINAL LAW — POSTCONVICTION RELIEF — PETITION FOR WRIT OF ACTUAL INNOCENCE — HEARING**

Court of Appeals held that Respondent's petition asserted sufficient grounds for relief entitling him to a hearing because the petition alleged "newly discovered evidence" that a witness at Respondent's trial "lied" at trial, creating a "substantial or significant possibility" that Respondent's trial may have been different.

IN THE COURT OF APPEALS

OF MARYLAND

No. 40

September Term, 2016

_____

STATE OF MARYLAND

v.

JEFFREY D. EBB, SR.

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Battaglia, Lynne A.
 (Senior Judge, Specially Assigned)

JJ.

_____

Opinion by Hotten, J.
McDonald and Watts, JJ., concur.

_____

Filed: April 24, 2017

We consider whether a petition filed under Maryland Code, Criminal Procedure Article ("Crim. Proc.") §8-301 was improperly denied prior to a hearing, when the petition alleged "newly discovered evidence" that a trial witness stated, twenty years later, that he "lied[.]"

In 1993, Jeffrey D. Ebb, Sr. ("Respondent") was convicted of two counts of felony murder, one count of attempted murder, one count of attempted armed robbery, and three counts of first-degree assault, stemming from a 1992 armed robbery that resulted in two deaths. Respondent was sentenced to life without parole for the murders, and additional periods of incarceration for the remaining unmerged offenses. At trial, Jerome House-Bowman ("Mr. House-Bowman") testified regarding Respondent's intent to commit an armed robbery and identified Respondent as the individual who shot the victims.

Twenty years later, Mr. House-Bowman, in a signed statement, alleged that he "lied" during Respondent's trial "to save [his] niece, (Stephanie Stevenson) from prosecution and conviction …." Based on Mr. House-Bowman's recantation, Respondent filed a *pro se* petition for writ of actual innocence under Crim. Proc. §8-301, alleging that Mr. House-Bowman's recantation constituted "newly discovered evidence" that created a "substantial or significant possibility that the result [of Respondent's trial] may have been different." Respondent appealed, and the Court of Special Appeals reversed the circuit court, concluding Respondent was entitled to a hearing on the merits of his petition.

For the reasons that follow, we shall vacate the judgment of the Court of Special Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Underlying Criminal Proceedings

On the afternoon of November 28, 1992, a gunman entered Brodie's Barbershop in Catonsville, Maryland. During the course of an attempted robbery, two people were killed and another was wounded. Witnesses identified Respondent as the gunman. At a six-day trial, the State called several witnesses, including Stephanie Stevenson ("Ms. Stevenson") who testified regarding Respondent's criminal agency. Ms. Stevenson also testified that she participated in the attempted robbery, but that Respondent was the person who shot all three victims.

Ms. Stevenson's testimony was corroborated by Mr. House-Bowman, her uncle. Mr. House-Bowman testified that sometime in December 1992, Respondent told Mr. House-Bowman, in confidence, that Respondent was involved in the "[b]arbershop murder," and that "it first started out as a robbery. It was supposed to be a robbery and somehow it got fouled up and [Respondent] had to shoot two people." Mr. House-Bowman also testified that Respondent told him that Respondent knew where the money was kept in the barbershop, which was why he decided to rob it. Mr. House-Bowman also stated that Respondent described to him in detail how Respondent escaped from the barbershop after he shot the victims.

At trial, the State also introduced into evidence a Browning semi-automatic 9 mm pistol that was alleged to have been used during the course of the incident, and purchased by Todd Timmons from Respondent sometime in November 1992. Additionally, the State called Joseph Kopera ("Mr. Kopera"), a ballistics and firearm expert employed by the

2

Maryland State Police Crime Laboratory, who testified that all the spent cartridge casings and bullets recovered from the bodies of the victims were fired from the same Browning semi-automatic 9mm pistol that was introduced into evidence.

Respondent was convicted of two counts of first-degree felony murder, one count of attempted second-degree murder, one count of attempted armed robbery, and three counts of first-degree assault. . The court imposed a sentence of life without the possibility of parole on the murder counts, and imposed an additional 80 years of incarceration, to run concurrently, as to the remaining unmerged counts.

Respondent's convictions were upheld in an unreported, *per curiam* opinion in the Court of Special Appeals. *See Jeffrey D. Ebb, Sr. v. State of Maryland*, No. 1809, Sept. Term, 1994 (filed July 20, 1994). This Court granted Respondent's petition for writ of certiorari, and also upheld his convictions. *See Ebb v. State*, 341 Md. 578, 671 A.2d 974 (1996), *overruled on other grounds by Calloway v. State*, 414 Md. 616, 996 A.2d 869 (2010).[1]

Respondent subsequently filed postconviction petitions in 1997 and in 2007, but withdrew both without prejudice prior to a hearing. Respondent also filed a petition for writ of actual innocence in 2011, based on the trial testimony of Mr. Kopera – the ballistics expert. That petition was denied after a hearing in the Circuit Court for Montgomery County. The denial of Respondent's petition was affirmed on appeal in an unreported

---

[1] In *Calloway*, we overruled *Ebb* with respect to its holding regarding cross-examination of a witness for the prosecution (not the witness who has allegedly now recanted). *See Calloway*, 414 Md. 616, 996 A.2d 869.

3

opinion in the Court of Special Appeals. *See Jeffrey D. Ebb, Sr. v. State of Maryland*, No. 1342, Sept. Term, 2012 (filed June 16, 2014).

## II.     Petition for Writ of Actual Innocence

On May 7, 2015, Respondent filed a new petition for writ of actual innocence, *pro se*, in the Circuit Court for Montgomery County. In the new petition, Respondent alleged that one of the witnesses from his original trial, Mr. House-Bowman, "recanted his statement and testimony[.]" Respondent attached a statement[2] from Mr. House-Bowman, dated January 5, 2013, which stated in relevant part, "I lied, in court, at the trial of Jeffrey Edd [sic] to save my niece, [Ms. Stevenson] from prosecution and conviction, facing her, I just did not tell the truth at the trial, I was trying to help my niece."

On July 17, 2015, the circuit court denied Respondent's petition without a hearing. In its order, the circuit court concluded that Respondent's petition contained "merely impeaching evidence, and not material evidence, because [Respondent] was linked to the crime by several other witnesses – including eye witnesses." The circuit court noted that:

> Stephanie Stevenson testified in detail about [Respondent's] involvement in the crime, and Charles Dunlop, an eye witness, identified [Respondent] from photographs. Kevin Johnson, another eyewitnesses [sic], testified that he recognized the [Respondent] as the shooter in this case when he saw [Respondent's] picture on the news and notified the police. More importantly, ballistics reports linked the murder weapon to [Respondent].

---

[2] We note Mr. House-Bowman's statement is titled "affidavit," but as the State notes, the document was not sworn under penalties of perjury, and therefore fails to comply with the requirements contained in Md. Rule 1-304. We will therefore refer to Mr. House-Bowman's recantation as a "statement" rather than as an "affidavit."

On July 24, 2015, Respondent filed a motion for reconsideration that was denied in an order dated August 26, 2015. In its denial, the circuit court reiterated there was "overwhelming evidence, independent from Mr. House-Bowman's testimony, support[ing] [Respondent's] conviction. This evidence includes testimony from [Respondent's] accomplice, two eye witnesses, and [a] ballistic report[] that linked the murder weapon to [Respondent]."

Thereafter, Respondent filed a timely notice of appeal to the Court of Special Appeals.

### III. Court of Special Appeals' Reversal

The Court of Special Appeals, in an unreported opinion, reversed the circuit court's denial of Respondent's petition without a hearing. *See State of Maryland v. Jeffrey D. Ebb, Sr.*, No. 1427, Sept. Term, 2015 (filed May 25, 2015).

The Court concluded that an individual who is convicted of a crime and eligible to file a petition for a writ of actual innocence under Crim. Proc. §8-301, "is entitled to a hearing on the merits of the petition, provided that the petition sufficiently pleads grounds for relief under the statute, includes a request for a hearing, and complies with the filing requirements of [Crim. Proc.] §8-301(b)." *See Douglas v. State*, 423 Md. 156, 165, 31 A.3d 250, 255 (2011); *State v. Hunt*, 443 Md. 238, 250-51, 116 A.3d 477, 484 (2015).

The Court noted that a petition is not required to prove the petitioner's assertions, but rather, that the trial court is obligated to view the facts asserted in the light most favorable to the petitioner, and required to hold a hearing if "the allegations could afford a petitioner relief, [assuming] those allegations would be proven at a hearing." *Ebb*, No.

5

1427, Sept. Term 2016 at 6 (quoting *Hunt*, 443 Md. at 251, 116 A.3d at 484)). The Court

also noted that in *Douglas*, we held:

> [A] trial court may dismiss a petition without a hearing when one was
> requested, pursuant to [Crim. Proc.] §8-301(e)(2), only when a petitioner
> fails to satisfy the pleading requirement. The pleading requirement mandates
> that the trial court determine whether the allegations could afford a petitioner
> relief, if those allegations would be proven at a hearing, assuming the facts
> in the light most favorable to the petitioner and accepting all reasonable
> inferences that can be drawn from the petition. That is, when determining
> whether to dismiss a petition for writ of actual innocence without a hearing
> pursuant to [Crim. Proc.] §8-301(e)(2), provided the petition comports with
> the procedural requirements under [Crim. Proc.] §8-301(b), the trial court
> must consider whether the allegations, if proven, consist of newly discovered
> evidence that "could not have been discovered in time to move for a new trial
> under Maryland Rule 4-331" and whether that evidence "created a
> substantial or significant possibility that the result [of the trial] may have
> been different. [Crim. Proc.] §8-301(a).

*Douglas*, 423 Md. at 180, 31 A.3d at 264. The Court concluded that the trial court erred in

resolving the petition without a hearing because Petitioner met the pleading requirement

by "alleging facts that theoretically could have resulted in a different trial." *Ebb*, No. 1427,

Sept. Term 2016 at 9.

The Court also noted that in *Douglas*, we described the analysis the circuit court is

obligated to undertake when a petition has satisfied the procedural pleading requirements

of Crim. Proc. §8-301. *Id.* at 10. We concluded in *Douglas* that Crim. Proc. §8-301

"authorizes the trial court to dismiss a petition for writ of actual innocence without a

hearing even though one was requested, if the court concludes that the allegations, if

proven, could not entitle a petitioner to relief." *Id.* (quoting *Douglas*, 423 Md. at 185, 31

A.3d at 267. The Court concluded that the circuit court erred in denying Respondent's

6

petition on the grounds that Mr. House-Bowman's recantation was "merely impeaching" because "[i]f, in fact, a material witness has recanted testimony about facts that played a significant role in the case, that recantation could be evidence that is directly exculpatory and not 'merely impeaching.'" *Id.* at 11. The Court also held that, "'[A]s long as a court could reasonably conclude that the newly-discovered evidence, if believed, could create a substantial or significant possibility of a different result, the court may not dismiss a petition' based upon a characterization of the new evidence as merely impeaching." *Id.* at 12 (quoting *Snead v. State*, 224 Md. App. 99, 113, 119 A.3d 137, 145 (2015)).

The Court reversed the circuit court's denial of Respondent's petition, vacated the judgment, and remanded the case for further proceedings.

The State noted a timely Petition for Writ of Certiorari to this Court, which was granted on September 2, 2016.

## STANDARD OF REVIEW

The standard of review is *de novo* when appellate courts consider the legal sufficiency of a petition for writ of actual innocence that was denied without a hearing. *Hunt*, 443 Md. at 247, 116 A.3d at 482.

**DISCUSSION**

I.      **Petition's Compliance with Pleading Requirements Contained in Crim. Proc. §8-301(b) and Md. Rule 4-332(d)**

      a.  **Pleading Requirements for Petitions of Writ of Actual Innocence**

          i.  **Crim. Proc. §8-301**

In 2009, the General Assembly enacted Crim. Proc. §8-301 to address the statutory gap for convicted defendants who could not secure postconviction relief because they obtained newly discovered evidence that was either non-biological,[3] or discovered after the one year limitation in Maryland Rule 4-331. *See Smallwood v. State*, 451 Md. 290, 313-20, 152 A.3d 776, 789-93 (2017) (discussing Crim. Proc. §8-301's legislative history).

---

[3] In 2001, the General Assembly enacted Crim. Proc. §8-201, titled "Petition for DNA testing and preservation of scientific identification evidence[,]" which, in relevant part, states:

> (b) a person who is convicted of a crime of violence under §14-101 of the Criminal Law Article may file a petition:
>   (1) for DNA testing of scientific identification evidence that the State possesses that is related to the judgment of conviction; or
>   (2) for a search by a law enforcement agency of a law enforcement data base or log for the purpose of identifying the source of physical evidence used for DNA testing.

Crim. Proc. §8-201(b). "Scientific identification evidence" is defined in the statute as evidence that "(i) is related to an investigation or prosecution that resulted in a judgment of conviction; (ii) is in the actual or constructive possession of a law enforcement agency or agent of a law enforcement agency; and (iii) contains biological evidence from which DNA may be recovered that may produce exculpatory or mitigating evidence relevant to a claim of a convicted person of wrongful conviction or sentencing if subject to DNA testing." Crim. Proc. §8-201(a)(5). The statute defines "[b]iological evidence" to include "any blood, hair, saliva, semen, epithelial cells, buccal cells or other bodily substances from which genetic marker groupings may be obtained." Crim. Proc. §8-201(a)(2).

Crim. Proc. §8-301 contains specific pleading requirements for a petition. Sub-section (b) requires a petition to include the following:

> (b) A petition filed under this section shall:
> (1) be in writing;
> (2) state in detail the grounds on which the petition is based;
> (3) describe the newly discovered evidence;
> (4) contain or be accompanied by a request for hearing if a hearing is sought; and
> (5) distinguish the newly discovered evidence claimed in the petition from any claims made in prior petitions.

Additionally, sub-section (e) provides:

> (e) (1) Except as provided in paragraph (2) of this subsection, the court shall hold a hearing on a petition filed under this section if the petition satisfies the requirements of subsection (b) of this section and a hearing was requested.
> (2) The court may dismiss a petition without a hearing if the court finds that the petition fails to assert grounds on which relief may be granted.

In *Douglas*, we concluded that Crim. Proc. §8-301 only "requires that a petition 'assert' grounds for relief, it does not require the petitioner to satisfy the burden of proving those grounds in the papers submitted." *Douglas*, 423 Md. at 179, 31 A.3d at 264; *see also Hunt*, 443 Md. at 251, 116 A.3d at 484 (quoting *Douglas*, 423 Md. at 179, 31 A.3d at 264). Additionally, "[n]othing in the language of the statute requires more than that a petitioner plead those assertions [in sub-section (b)] before the hearing requirement [in sub-section (e)] is triggered." *Douglas*, 423 Md. at 180, 31 A.3d at 264.[4] We concluded, therefore, that,

> the statute establishes only a burden of pleading grounds for relief, not of proving them, and that a trial court may dismiss a petition without a hearing

---

[4] *Douglas* considered a petition filed before Maryland Rule 4-332 went into effect in October 2011.

9

when one is requested, pursuant to [Crim. Proc.] §8-301(e)(2), only when a petitioner fails to satisfy the pleading requirement. The pleading requirement mandates that the trial court determine whether the allegations could afford petitioner relief, if those allegations would be proven at a hearing, assuming the facts in the light most favorable to the petitioner and accepting all reasonable inferences that can be drawn from the petition.

*Id.*; *see also Hunt*, 443 Md. at 251, 116 A.3d at 484 (quoting *Douglas*, 423 Md. at 180, 31 A.3d at 264).

We also recognized in *Douglas* the persuasive value of holding a hearing in cases brought under Crim. Proc. §8-301. *Id.* at 181, 31 A.3d at 265 (citing *Jackson v. State*, 358 Md. 612, 625, 751 A.2d 473, 479-80 (2000)). In *Douglas*, we quoted *Jackson* at length, explaining:

[The right to a hearing] represents an assessment by us of the significance of the matter under consideration, at least to the parties, and, given that significance, of their right, if they choose to exercise it, to present directly to the court, *viva voce*, the reasons why they should prevail. It is a recognition that personal, vocal communication with the judge may not only itself be a more effective means of persuasion than written documents that may be read hurriedly and not fully appreciated or understood, but that a hearing offers at least a limited opportunity for dialogue, allowing for clarification, for greater precision, for addressing concerns harbored and expressed by the judge. It is a right that, ordinarily, may be waived, but when not waived, we are loathe, in the absence of extraordinary circumstances, to find its denial harmless. It would often be a matter of pure speculation whether prejudice ensued — whether, had the party been given the opportunity to make his or her "pitch" at a hearing, the result may have been different—and that is much more likely the case when the decision may rest upon the resolution of factual disputes or the exercise of discretion and judgment.

*Id.* (quoting *Jackson*, 358 Md. at 625, 751 A.2d at 479-80).

In reviewing petitions brought under Crim. Proc. §8-301, we also "construe liberally filings by *pro se* inmates, particularly when the statute involved is remedial." *Id.* at 182, 31 A.3d at 266 (quoting *State v. Matthews*, 415 Md. 286, 298, 999 A.2d 1050, 1057

10

(2010)); *see also Hunt*, 443 Md. at 251, 116 A.3d at 484 (quoting *Douglas*, 423 Md. at 182, 31 A.3d at 266).

Respondent's petition satisfied the requirements contained in Crim. Proc. §8-301(b). The petition complied with subsection (b)(1) and (b)(4) because it was in writing and requested a hearing. Respondent's petition also satisfied sub-section (b)(5) because the alleged newly discovered evidence of Mr. House-Bowman's recantation was distinct from his prior alleged newly discovered evidence regarding Mr. Kopera's perjury.[5] Finally, as discussed more fully *infra*, Respondent's petition satisfied subsections (b)(2) and (b)(3) because – under the *Douglas* pleading standard – Respondent included in his petition Mr. House-Bowman's statement from January 2013 that asserted he had "lied" at trial. Respondent also provided sufficient evidence that the State relied, in part, on Mr. House-Bowman's testimony in establishing Respondent committed several crimes for which Respondent was later convicted, thus creating a "significant or substantial possibility" that the outcome of Respondent's trial may have been different.

---

[5] We noted in *Douglas*,

> a petitioner may not file multiple petitions based on the same claim, but that does not prevent a petitioner from filing subsequent petitions asserting grounds of different newly discovered evidence. The possibility of filing multiple petitions asserting different grounds gives context to the requirement that a petitioner distinguish the evidence in the instant petition from claims in prior petitions.

423 Md. at 184-85, 31 A.3d at 267.

11

## ii. Maryland Rule 4-332

On September 8, 2011, we adopted Maryland Rule 4-332, effective October 1, 2011, to clarify the pleading requirements under Crim. Proc. §8-301. Specifically, Maryland Rule 4-332(d) requires a petition filed under Crim. Proc. §8-301 to include the following:

(d) The petition shall be in writing, shall be signed by the petitioner or the petitioner's attorney, and shall state:

   (1)  the court in which the indictment or criminal information was filed and the file number in that case;

   (2)  if the case was removed to another court for trial, the identity of that court;

   (3)  each offense of which the petitioner was convicted, the date of the judgment of conviction, and the sentence imposed;

   (4)  if the judgment was appealed, the case number in the appellate court, a concise description of the issues raised in the appeal, the result, and the date of the appellate court's mandate;

   (5)  for each motion or petition for post-judgment relief, the court in which the motion or petition was filed, the case number assigned to each proceeding, a concise description of the issues raised, the result, and the date of disposition;

   (6)  that the request for relief is based on newly discovered evidence which, with due diligence, could not have been discovered in time to move for a new trial pursuant to Rule 4-331;

   (7)  a description of the newly discovered evidence, how and when it was discovered, why it could not have been discovered earlier, and, if the issue of whether the evidence could have been discovered in time to move for a new trial pursuant to Rule 4-331 was raised or decided in an earlier appeal or post-judgment proceeding, the identity of the appeal or proceeding and the decision on that issue;

   (8)  that the newly discovered evidence creates a substantial or significant possibility, as that standard has been judicially determined, that the result may have been different, and the basis for that statement;

   (9)  that the conviction sought to be vacated is based on an offense that the petitioner did not commit;

  (10)  if the petitioner is not already represented by counsel, whether the petitioner desires to have counsel appointed by the court, and, if so, facts establishing indigency;

(11) that a copy of the petition, together with all attachments, was mailed to the State's Attorney of the county in which the petition was filed;

(12) the relief requested; and

(13) whether a hearing is requested.

Sub-section (j) requires a court to hold a hearing on a petition filed under Crim. Proc. §8-301 if the petition is not dismissed under sub-section (i)(1)(A), and "if the petition substantially complies with the requirements of section (d) of this Rule and a hearing was requested." Maryland Rule 4-332(j)(1). Under sub-section (i)(1) a court may either dismiss a petition filed under Crim. Proc §8-301, or, in its discretion, "[g]rant leave to amend the petition to correct the deficiency." Maryland Rule 4-332(i)(1)(A), (B). In considering whether to grant leave to amend the petition, sub-section (h) states that, "[a]mendments to the petition shall be freely allowed in order to do substantial justice." Maryland Rule 4-332(h).

In discussing Maryland Rule 4-332's pleading requirements, we clarified in *Hunt* that sub-section (d), in addition to requiring the recitation of certain procedural information,[6] also "elaborates on the contents of petitions for writ of actual innocence." *See Hunt*, 443 Md. at 249, 116 A.3d at 483. We determined that petitions filed under Crim. Proc. §8-301 must comply with the requirements stated in sub-section (d)(6)–(9), and (12)–(13). *See id.* at 249-50, 116 A.3d at 483-84. In *Hunt*, we considered two petitions for writ

---

[6] We concluded that Maryland Rule 4-332(d)(1)–(5) and (10)–(11) merely required the recitation of procedural information. *See Hunt*, 443 Md. at 249, n. 11, 116 A.3d at 483, n. 11.

of actual innocence, only one of which – Hardy's – was subject to Maryland Rule 4-332.[7]

*Id.* at 254, 116 A.3d at 486. We concluded that Hardy's petition complied with the pleading requirements contained in (d)(6), (7), and (9), but acknowledged that Hardy's petition did not comply with other technical requirements contained in the Rule, including subsections (d)(3), (4), and (5). *Id.* at 255, 116 A.3d at 487.

Despite the procedural deficiencies, we held the circuit court was not required to dismiss Hardy's petition because Maryland Rule 4-332(i)(1) provides a "relief valve" for the circuit court to avoid dismissal of a petition if the petition "compl[ies] substantially with the requirements of [sub]section (d) [of Maryland Rule 4-332.]" *See id.* at 255-56, 116 A.3d at 487. We also noted that no appellate decision considering petitions filed after October 1, 2011, dismissed those petitions for lack of compliance with the more technical requirements of Rule 4-332. *See id.* at 256, 116 A.2d at 487. Rather, "[w]here petitions were dismissed, it was for more substantive violations of other requirements." *Id.* (citing *Ward v. State*, 221 Md. App. 146, 168-70, 108 A.3d 507, 520-21 (2015); *Yonga v. State*, 221 Md. App. 45, 64, 108 A.3d 448, 459 (2015), [*aff'd* 446 Md. 183, 130 A.3d 486 (2016)]; *Jackson v. State*, 216 Md. App. 347, 364-65, 373-75, 86 A.3d 97, 107, 112-13 (2014); *Keyes v. State*, 215 Md. App. 660, 666, n. 3, 84 A.3d 141, 144, n. 3 (2014)).

In the case at bar, Respondent's petition satisfied the more technical requirements contained in Maryland Rule 4-332, including those in subsection (d)(1), (3), (4), (5), (11),

---

[7] Hardy's petition was filed on July 31, 2012. *Hunt*, 443 Md. at 254, 116 A.3d at 486.

(12), and (13).[8] We also note that Maryland Rule 4-332(d)(2) is not applicable under the facts before us because Respondent's criminal case was not removed to another court for trial.

---

[8] In his petition, filed in the Circuit Court for Montgomery County under his prior criminal case number, Respondent stated the following procedural history:

1. [Respondent] is currently incarcerated at Jessup [C]orrectional Institution under inmate number 192431. [Respondent] was convicted on November 3, 1993 of two counts of felony murder, one count attempted second degree murder, one count attempted robbery with a deadly weapon, two counts of use with a handgun, and three counts of assault. On November 11, 1993, after a death penalty hearing, the jury returned sentences of life without parole and the court imposed additional sentences totaling eighty years.

2. On direct appeal, the Court of Special [A]ppeals affirmed the convictions in an unreported per curiam decision. [*Ebb v. State*], No. 1809, Sept. Term 1994 (filed July 20, 1994). The Court of Appeals affirmed the judgment of the [l]ower court. [*Ebb v. State*], 341 Md. 578 (1996) majority and dissenting opinion filed.

3. A pro-se post conviction petition was filed on April 16, 1997, but withdrawn without prejudice on February 5, 1998. A new pro-se post conviction petition was filed on September 24, 2007, but was withdrawn without prejudice on February 12, 2009, by Assistant Public [D]efender Mr. David Russell, of the collateral review division, in order to further investigate the claims in the petition. [Respondent] understands at this time that said investigation is currently being conducted.

\*   \*   \*

9. Petitioner request[s] an open court hearing to submit live testimony, witnesses, and evidence for this Court's review and consideration.

WHEREFORE, [Respondent] request an open court hearing to determine if a new trial and/or other relief should be awarded in [sic] [Respondent's] behalf.

15

Turning to the substantive requirements contained in Maryland Rule 4-332, we noted in *Hunt* that Maryland Rule 4-332(d)(6) "elaborates on [Crim. Proc.] §8-301(b)(3)'s 'newly discovered evidence' requirement, adding that a petition for writ of actual innocence must allege that the newly discovered evidence, 'with due diligence, could not have been discovered' in time to move for a new trial pursuant to [Maryland] Rule 4-331." *Hunt*, 443 Md. at 254, 116 A.3d at 486. In Respondent's petition, he alleges that the newly discovered evidence in his case was that the "[p]rosecut[or's] material witness [Mr. House-Bowman] recanted his statement and testimony on January 5, 2013, under penalties of perjury." Respondent also included in his Memorandum of Law and Facts in Support of Petition for Writ of Actual Innocence, the statement that, "[Mr. House-Bowman], did not come forward until January 5, 2013, twenty years after [Respondent's] trial. Thus, [Mr. House-Bowman's] false testimony could not have been discovered in time to move for a new trial under [Maryland] Rule 4-331." In his brief, Respondent noted that a defendant convicted on perjured testimony "would have no way of knowing that a witness who falsely implicated him under oath would later come forward and recant." As Respondent argues, a reasonable inference can be drawn that Mr. House-Bowman's recantation was not available to Respondent until Mr. House-Bowman contacted Respondent and volunteered to recant. We conclude, therefore, that these statements are sufficient to satisfy the pleading requirement of Maryland Rule 4-332(d)(6).

We concluded in *Hunt* that Hardy's petition satisfied Maryland Rule 4-332(d)(7) because the petitioner attached a *Baltimore Sun* article that raised questions about Mr. Kopera's academic qualifications and an affidavit from the public defender who

16

represented the petitioner that recounted her discovery of Mr. Kopera's misrepresentations, and this information was included in his petition. *See Hunt*, 443 Md. at 254-55, 116 A.3d at 486. Here, Respondent attached the statement from Mr. House-Bowman recanting his original testimony to his petition, and in his petition he alleged that "[Mr. House-Bowman] has now come forward to renounce the testimony and statements he gave against Petitioner and revealed they were all false." Respondent also noted in his petition that "[o]n January 5, 2013, Mr. Floyd Turpin, a private investigator, conducted an interview with [Mr. House-Bowman]. During this interview, [Mr. House-Bowman] signed an affidavit, recanting his statement and testimony at trial, which constitutes newly discovered evidence." We conclude the statements included in Respondent's petition and the attachment of Mr. House-Bowman's recantation statement are sufficient to satisfy the pleading requirement in Maryland Rule 4-332(d)(7). Additionally, as discussed more fully *infra*, we conclude Respondent's petition also satisfied the requirement in Maryland Rule 4-332(d)(8) requiring the alleged newly discovered evidence to create a substantial or significant possibility that the result in Respondent's trial may have been different.

The parties both acknowledge that Respondent's petition does not comply with the requirement in subsection (d)(9) that the petition include an averment "that the conviction sought to be vacated is based on an offense that the petitioner did not commit." Maryland Rule 4-332(d)(9). The State also argues that Respondent's evidence "is so lacking in specificity that one cannot even find an implicit protestation of innocence in the pleading" as we concluded in *McGhie v. State*. *See* 449 Md. 494, 509, n. 6, 114 A.3d 752, 761, n. 6 (2016). In contrast, Respondent argues that because we found in *McGhie* there was no

17

"jurisdictional concern with the lack of an averment of innocence[,]" *id.*, our holding "lends support to the conclusion that 'substantial' compliance does not require a *pro se* petition for writ of actual innocence to expressly state 'that the conviction sought to be vacated is based on an offense that the petitioner did not commit[.]'" *See* Maryland Rule 4-332(d)(9).

In *McGhie*, we noted that Maryland Rule 4-332 was promulgated to "elaborate on the procedures for filing a petition for writ of actual innocence." *McGhie*, 449 Md. at 509, n. 6, 114 A.3d at 761, n. 6. Relying on our holding in *Hunt*, and the "relief valve" contained in Maryland Rule 4-332(i)(1)(A), we held that there was no reason to dismiss the petition for its failure to comply with sub-section (d)(9). *Id.* (citing *Hunt*, 443 Md. at 255-56, 116 A.3d at 487). In so holding, we noted that

> [t]he record makes plain that [p]etitioner had testified at trial to his actual innocence of the charged crimes. The State has not moved to dismiss the petition for lack of an averment of innocence and, in response to this Court's questions at oral argument, had no quarrel with the adequacy of the petition. Moreover, the hearing judge evidently did not recognize any problem in this regard and proceeded to conduct a hearing on the merits of the petition. Under these circumstances, and detecting no jurisdictional concern with the lack of an averment of innocence, we have no just reason to direct a dismissal of the petition.

*Id.*

In another case considering a petition that did not contain an averment of innocence, the Court of Special Appeals noted that "[Maryland] Rule 4-332 became effective on October 1, 2011 and applies to all petitions filed on or after that date," but then concluded that "[b]ecause the circuit court did not grant leave to amend the petition prior to dismissing it, *see* [Maryland] Rule 4-332(h) …, and made no mention in its order as to the reasons it

18

denied the petition, we do not rely upon noncompliance with [Maryland] Rule 4-332 for affirmance." *Keyes v. State*, 215 Md. App. 660, 666 n. 3, 84 A.3d 141, 144 n. 3 (2014). The Court, instead, focused its analysis on whether the petition at issue "sufficiently [pled] grounds for relief[,]" and concluded the petition failed to allege "newly discovered evidence" that "create[ed] a substantial or significant possibility that the result may have been different[.]" *See id.* at 668, 84 A.3d at 146. Central to the *Keyes* Court's determination that the petition should not be dismissed for noncompliance with subsection (d)(9) was the fact that the circuit court did not grant the petitioner leave to amend his petition pursuant to Maryland Rule 4-332(h).

Our holding in *McGhie* and the Court of Special Appeals' conclusion in *Keyes* make clear that a petition's failure to include an averment of innocence, alone, is not a basis for dismissing a petition under Crim. Proc. §8-301. Rather, for petitions that otherwise satisfy the pleading requirements contained in subsection (d), but fail to assert an averment of innocence, the hearing court may grant the petitioner leave to amend his or her petition to correct the deficiency pursuant to Maryland Rule 4-332(i)(1)(B) and (h) if in so doing, it would do substantial justice.

In the case at bar, we acknowledge that the circuit court did not dismiss Respondent's petition due to its failure to aver that he was actually innocent of the crimes for which he was convicted. Rather, the circuit court dismissed Respondent's petition because it concluded

> there was overwhelming evidence of [Respondent's] guilt in this case and thus Mr. House-Bowman's recantation of his testimony is merely impeaching evidence. For similar reasons, Mr. House-Bowman's recantation

19

of his testimony under oath does not create a substantial possibility of a different outcome at trial – given the overwhelming evidence of [Respondent's] guilt.

As discussed more fully, *infra*, we conclude that, on its merits, Respondent's petition has sufficiently alleged "newly discovered evidence" that could create a "substantial or significant possibility" that the outcome of his trial may have been different. For Respondent to be entitled to a hearing on the petition's merits, however, we hold that the circuit court must first make a determination that allowing Respondent to amend his petition to comply with Maryland Rule 4-332(d)(9)'s pleading requirement would do substantial justice. *See* Maryland Rule 4-332(h). Respondent is not entitled to a hearing unless the circuit court determines that amending his petition would do substantial justice. *See* Maryland Rule 4-332(h); *See Hunt*, 443 Md. at 249-50, 116 A.3d at 483-84 (requiring petitions filed pursuant to Crim. Proc. §8-301 to, *inter alia*, comply with the pleading requirement contained in Maryland Rule 4-332(d)(9)). In determining whether allowing Respondent to amend his petition would do substantial justice, the circuit court must articulate its reasoning on the record.

If the circuit court concludes that Respondent may amend his petition to comply with the pleading requirement in Maryland Rule 4-332(d)(9), Respondent's averment must allege which convictions he is "actually innocent" of, meaning which offenses he alleges he "did not commit." *See Smallwood*, 451 Md. at 320, 152 A.2d at 793 (holding that "[o]nly defendants who can allege they are 'actually innocent,' meaning they did not commit the crimes for which they are convicted, may bring a petition for relief under Crim. Proc. §8-301."); *see also* Maryland Rule 4-332(d)(9). Additionally, we leave it to the

20

petitioning court's discretion to determine a reasonable timeframe within which Respondent may amend his petition to comply with Rule 4-332(d)(9)'s pleading requirement, and for the State to respond.

Accordingly, the judgment of the Court of Special Appeals should be vacated, and the case remanded to the circuit court for further proceedings consistent with this opinion.

## II. Respondent's Entitlement to A Hearing Under Crim. Proc. §8-301(e)(1)

Because the circuit court may find on remand that Respondent is entitled to amend his petition to comply with pleading requirement in Maryland Rule 4-332(d)(9), we must consider whether Respondent's petition pled sufficient grounds for relief that would otherwise entitle him to a hearing under Crim. Proc. 8-301(e)(1). The plain language in Crim. Proc. §8-301(a) requires a petitioner to assert that "there is newly discovered evidence that … (1) creates a substantial or significant possibility that the result may have been different, as that standard has been judicially determined …[.]" We previously held that the "substantial or significant possibility" standard "falls between 'probable,' which is less demanding than 'beyond a reasonable doubt,' and 'might' which is less stringent than probable." *McGhie*, 449 Md. at 510, 114 A.3d at 762 (quoting *Yorke v. State*, 315 Md. 578, 588, 556 A.2d 230, 234-35 (1989)).

Additionally, as noted, *supra*, we determine whether the allegations in Respondent's petition could afford him relief, if the allegations can be proven at the hearing, and we assume the facts in the light most favorable to Respondent, accepting all reasonable inferences that can be drawn from his petition. *See Douglas*, 423 Md. at 180, 31 A.3d at 264. We also "construe liberally" Respondent's petition because he filed it *pro se. See*

21

*Douglas*, 423 Md. at 182, 31 A.3d at 266 (quoting *State v. Matthews*, 415 Md. at 298, 999 A.2d at 1057).

### i. Newly Discovered Evidence

The State argues that Mr. House-Bowman's statement is not "evidence," let alone "newly discovered," as those terms have previously been defined. The State avers that "evidence" is defined as "testimony or an item or thing that is capable of being elicited or introduced and moved into the court record, so as to be put before the trier of fact at trial." *See Hawes v. State*, 216 Md. App. 105, 134, 85 A.3d 291, 308 (2014). Additionally, the State argues that "newly discovered" means that the evidence could not have been found through the exercise of due diligence within the time allotted for seeking a new trial under Maryland Rule 4-331. *See* Crim. Proc. §8-301(a)(2) ("[a] person…may, at any time, file a petition for writ of actual innocence…if the person claims that there is newly discovered evidence that … (2) could not have been discovered in time to move for a new trial under [Maryland] Rule. 4-331."). Under both these definitions, and in the favorable light in which we view a petitioner's assertions, we conclude that Respondent properly asserted that Mr. House-Bowman's statement is "newly discovered evidence."

Respondent included a statement in his petition from Mr. House-Bowman asserting that he "lied, in court…to save [his] niece, (Stephanie Stevenson) from prosecution and conviction, facing her, [he] just did not tell the truth at the trial, [he] was trying to help [his] niece." It is reasonable to infer that if Respondent was granted a hearing on his petition, Mr. House-Bowman would be able to provide testimony that would expound on what he lied about at Respondent's trial. We also note that in his petition, Respondent alleged that

22

Mr. House-Bowman "has now come forward to renounce the testimony and statements he gave against [Respondent] and revealed they were all false." A reasonable inference could be drawn that Mr. House-Bowman may renounce his previous trial testimony. We therefore disagree with the State's argument that Respondent did not include any "evidence" in his petition.

We also conclude that Respondent sufficiently asserted that the "evidence" is "newly discovered." Mr. House-Bowman's statement is dated January 5, 2013 – twenty years after Respondent was originally convicted. Respondent also references in his petition that Mr. House-Bowman "[came] forward" to recant his testimony in January 2013. Although the State contends that Respondent failed to explain why this "newly discovered evidence" was not ascertained in sufficient time to seek a new trial under Maryland Rule 4-331, we conclude that Respondent's assertions are sufficient, at this stage, to satisfy this requirement. We also note that, absent evidence to the contrary, it is reasonable to infer that Respondent had "no way of knowing that a witness who falsely implicated him under oath would later come forward and recant[,]" until Mr. House-Bowman actually came forward in January 2013.

### ii. Significant or Substantial Possibility of a Different Result

We also conclude Respondent's "newly discovered evidence" could "create a substantial or significant possibility" that the outcome of Respondent's trial may have been different. *See* Crim. Proc. §8-301(a)(1). In Respondent's petition, he notes that at trial Mr. House-Bowman testified that: (1) Respondent confided in Mr. House-Bowman that he was the person police were looking for concerning the barbershop murders; (2) Respondent

23

went to the barbershop to rob it, but he saw a guy reaching for a gun, so he shot the man in the barber chair; (3) because the barber knew Respondent, he also shot him; and (4) Respondent discarded his clothes as he ran through some woods, and exited on a highway and made it to his home from there.

Respondent also quoted at length the State's opening, trial presentation, and closing arguments to highlight the State's reliance on Mr. House-Bowman's testimony during his trial. For example, Respondent notes at trial, the prosecutor stated "[t]he [Respondent] in his statement to [Mr. House-Bowman], 'I went to rob Brodie's Barbershop. I knew he had money and I knew where he kept it.' That is specific intent to rob, ladies and gentlemen." Respondent also notes that in his closing statement, the prosecutor stated, in relevant part,

> some of the most damning testimony of this trial, the [Respondent] met his friend, [Mr. House-Bowman] and he said [Mr. House-Bowman], I got something to tell you, but you have to take it in the utmost confidence. Absolutely, [Mr. House-Bowman] says. The [Respondent] say I feel that we are that kind of friends where I can tell you what I am about to say. Absolutely, [Mr. House-Bowman] says. You heard about the barbershop murders. Brodie's barbershop? Yeah, I heard about it, [Mr. House-Bowman] said. He dropped the bomb. I am the one the police are looking for. I am the one who did the murders in the barbershop. [Mr. House-Bowman] asked him to expound upon that a little bit. [Respondent] tells [Mr. House-Bowman] that he went to rob the barbershop because he knew the barbershop kept money. [Respondent] told [Mr. House-Bowman] that he shot the man with the gun. Ladies and gentlemen, the man with the gun was Kevin Johnson. The barber was James Brodie. The man in the chair was Michael Peters.
>
> \*     \*     \*
>
> No one knew it: The other thing [Ms. Stevenson] could not have told [Mr. House-Bowman] is that [Respondent] planned to rob Brodie's barbershop, because she didn't know that. She went in expecting to get money. She had called two minutes earlier on the telephone from the pay phone behind the station and Brodie said yeah, come on over, I will finish this up, I will give you the money. She had no expectation of murder and robbery, so she couldn't have told [Mr. House-Bowman].

24

*    *    *

> So how did [Mr. House-Bowman] know? Because [Respondent] told him. Remember the circumstances of the conversation between [Mr. House-Bowman] and [Respondent]. [Mr. House-Bowman] was very frank about it. We are sitting around, we are getting high. I have known him for about a year. Not a year from the date [Mr. House-Bowman] testified, but a year from the day he gave the statement. [Respondent] told me. That is what happened. Ladies and gentlemen, you clearly can't dismiss people because of their criminal record.

At this stage of the proceedings, it is reasonable to infer that Mr. House-Bowman's statement that he "lied, in court, at the trial of Jeffrey Edd [sic] …" was a reference to his testimony regarding statements Respondent allegedly made to him about robbing the barbershop. Assuming, *arguendo*, that such an inference is true, then the State would have had greater difficulty proving Respondent intended to rob the barbershop. Without evidence of a robbery, the felonious component of the felony-murder convictions would also be in jeopardy, thereby creating a "substantial or significant possibility that [Respondent's trial] may have been different[.]" *See* Crim. Proc. §8-301(a).

The State argues that there is an "innate suspicion that must surround all claims of recanted testimony." It further argues that Mr. House-Bowman's statement

> presents no coherent reason as to why the court should accept that he is telling the truth now. His proffered explanation– that he lied to save [Ms.] Stevenson from prosecution– seems false on its face, as the prosecution was well aware that [Ms.] Stevenson was [Respondent's] accomplice and nothing about [Mr.] House-Bowman's testimony seemed to exculpate [Ms.] Stevenson.[9]

---

[9] Respondent notes in his brief that the defense theory at trial was that Ms. Stevenson and Mr. House-Bowman colluded to produce false testimony that inculpated Respondent. Although this view was rebutted by the State during trial, such collusion would explain why Mr. House-Bowman now came forward and asserted that he "lied, … to save [his] niece, [Ms. Stevenson] from prosecution and conviction[.]"

25

We agree that there are serious questions regarding whether Respondent will be able to demonstrate that he should be entitled to a new trial, but that does not preclude his ability to obtain one. Consistent with *Douglas* and *Hunt*, although we conclude that Respondent may be entitled to a hearing on his petition, "it does not follow automatically … that he can prove his claim at that hearing." *See Hunt*, 443 Md. at 257, 116 A.3d at 488 (quoting *Douglas*, 423 Md. at 186, 31 A.3d at 268) (internal quotation marks omitted). In *Hunt* we determined that

> [petitioners] face significant hurdles in convincing a hearing judge that the questions regarding Kopera's qualifications 'create[] a substantial or significant possibility that the result may have been different' and 'could not have been discovered in time to move for a new trial.' [Petitioners'] causes are by no means doomed, however; a hearing judge may determine, based on whatever evidence and arguments as may be presented at the hearing, that [petitioners] are entitled to a new trial, resentencing, or other appropriate relief."

*Id.* at 258, 116 A.3d at 488 (citations omitted). While it is unclear at this juncture whether Respondent will prevail on his petition, we hold that he has alleged sufficient "newly discovered evidence" that could create a "substantial or significant possibility" that his original trial may have been different, and is therefore entitled to a hearing under Crim. Proc. §8-301(e)(1).

## CONCLUSION

In summary, we hold that a petition that otherwise complies with the pleading requirements contained in Maryland Rule 4-332(d), but fails to include an averment of innocence, may be amended under Maryland Rule 4-332(i)(1)(B) and (h) if the circuit court determines that allowing the petitioner to amend his or her petition would do

26

substantial justice. . Here, for Respondent to be entitled to a hearing on the merits of his petition, recognizing that Maryland Rule 4-332(h) indicates that "[a]mendments to the petition shall be freely allowed in order to do substantial justice[,]" the circuit court must first determine whether allowing him to amend his petition to comply with the mandatory pleading requirement in Maryland Rule 4-332(d)(9) would do substantial justice, and must articulate its reasoning on the record. Accordingly, the judgment of the Court of Special Appeals should be vacated and the case remanded to the circuit court for further proceedings consistent with this opinion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY MONTGOMERY COUNTY.**

Circuit Court for Montgomery County
Case No. 68891
Argued:  December 2, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 40

September Term, 2016

_____

STATE OF MARYLAND

v.

JEFFREY D. EBB, SR.

_____

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Battaglia, Lynne A.
(Senior Judge,
  Specially Assigned)

JJ.

_____

Concurring Opinion by McDonald, J.,
which Watts, J., joins.

_____

Filed: April 24, 2017

I concur in the very thorough Majority opinion. I write simply to emphasize the significance of the requirement in Maryland Rule 4-332(d)(9) that a petitioner like Mr. Ebb must affirmatively assert that he is actually innocent of the crimes for which he was convicted before a circuit court would be required to hold a hearing on a petition. This might be considered a fine point, but it goes to the heart of the statute that allows for a writ of actual innocence – Maryland Code, Criminal Procedure Article ("CP"), §8-301.

In his petition, Mr. Ebb did not assert, as required by Rule 4-332(d)(9), that "the conviction sought to be vacated is based on an offense that [Mr. Ebb] did not commit." This is not mere boilerplate. As this Court recently stated, "[o]nly defendants who can allege that they are 'actually innocent,' meaning they did not commit the crimes for which they are convicted, may bring a petition for relief under [the writ of actual innocence statute]." *Smallwood v. State*, 451 Md. 290, 320 (2017).

It is true that a petitioner might be found to be in "substantial compliance" with this requirement where the record establishes that the petitioner has previously asserted actual innocence under oath, particularly when the State has never objected to the failure to repeat that assertion in the petition. *See McGhie v. State*, 449 Md. 494, 509 n.6 (2016). It is also true that the rule was drafted in recognition that many such petitions would be filed by *pro se* petitioners and therefore provides that amendments should be "freely allowed in order to do substantial justice." Rule 4-332(h).

But here there is no indication, at least in the materials available to us, that Mr. Ebb has ever asserted under oath (or otherwise) that he was actually innocent of the offenses

1

for which he was convicted. Nor has Mr. Ebb apparently ever sought to amend his petition to that effect. And the State has certainly raised the issue of compliance with Rule 4-332.

The closest that Mr. Ebb has come is his assertion, in his brief to the Court of Special Appeals, that he "has maintained his innocence as being wrongfully convicted."[1] That is not an assertion of actual innocence. In our system of criminal justice, even one who has actually committed a criminal offense may legitimately maintain that he was wrongfully convicted. A criminal defendant has the right to put the State's evidence to the test and, if that evidence was obtained in violation of the Constitution or if there is some other serious defect with the prosecution, may quite correctly assert that he was "wrongfully convicted" and obtain reversal of a conviction. But that is a far cry from actual innocence.

In his brief, Mr. Ebb argues that his "newly discovered evidence" – actually, an alleged recantation of inculpatory trial testimony by a prosecution witness – would lighten the weight of the evidence against him such that it would no longer satisfy the standard of "beyond a reasonable doubt." That may be an assertion that he was wrongfully convicted, but it is not an assertion that he is actually innocent.

As this Court's detailed analysis of the legislative history of CP §8-301 in *Smallwood* demonstrated, the statute was designed to provide relief to a "narrow subset" of convicted defendants who are actually innocent of the offense for which they had been convicted, but have no other means of litigating the claim of innocence. *See Smallwood*,

---

[1] Mr. Ebb does not repeat that assertion in his brief to us, other than to quote the statement in his brief in the Court of Special Appeals and to argue that *it* satisfied Rule 4-332(d)(9).

2

451 Md. at 316-20. It is not an open-ended, deadline-free vehicle for raising any alleged defect that can framed as "newly discovered evidence" relevant to a conviction that has already been affirmed on direct appeal. [2]

Judge Watts has advised that she joins this opinion.

---

[2] I note that the Court of Special Appeals did not have the benefit of this Court's decisions in *Smallwood* or *McGhie* when it issued its unreported opinion in this case.